RICKERT *v.* TRAVELERS INS. CO. OF HARTFORD, CONN.

INSURANCE—LIFE INSURANCE—INDIGESTION—QUESTION FOR JURY.
  Whether or not applicant for life insurance concealed a material
  fact amounting to a false representation on his part by failing
  to disclose that visit to doctor reported to be about three years
  previously for treatment of an anal fissure was but two years
  previously and also for treatment for indigestion *held,* ques-
  tion for jury.

Appeal from Kent; Brown (William B.), J. Sub-
mitted June 17, 1937. (Docket No. 59, Calendar No.
39,565.) Decided December 15, 1937.

Action by James A. Rickert against Travelers
Insurance Company of Hartford, Connecticut, on a
life insurance policy. Directed verdict and judg-
ment for defendant. Plaintiff appeals. Reversed
and new trial granted.

*McCobb & Heaney,* for plaintiff.

*Knappen, Uhl, Bryant & Snow,* for defendant.

BUSHNELL, J. This is an appeal from a directed
verdict in favor of defendant company. The trial
court determined, as a question of law, that the fail-
ure of the insured to inform the insurer that he
visited a physician on July 11, 1934, when he was
treated for indigestion, was a fraud upon the com-
pany.

LaDoyte Clemans applied for $3,000 of life insur-
ance on February 1, 1936, in favor of his partner and

was physically examined by Dr. Stiefel of Battle Creek on the same day. His application contained, among others, the following questions and answers:

"Have you within the past 10 years received medical advice or attention? Yes. Surgical advice or attention? Yes, anal fissure cauterized. * * *

"What physician did you consult? Dr. Winslow.

"When? Three years ago, 1932.

"For what? Anal fissure.

"Duration of illness? 2–3 days.

"Present health? Good.

"Name and residence of usual medical attendant, or family physician? Dr. Winslow. * * *

"Have you ever modified or restricted your diet? No."

Clemans, then about 38 years old, dropped dead on the street July 22, 1936, and the death certificate, filed by the coroner, gave the principal cause of his death as "coronary thrombosis (acute dilation), died suddenly on the street." No laboratory tests were made and no autopsy was performed.

Dr. Stiefel's examination of Clemans did not disclose any heart trouble; his weight was normal and his blood pressure was 120–85. The doctor considered "applicant an excellent risk." Dr. Winslow was called as a witness by defendant and testified that Clemans first called at his office in 1932 complaining of indigestion after a heavy meal and that he was treated for biliary stasis (inhibited flow of bile). He was given a non-hydrochloric acid solution, *nux vomica,* some anti-dyspeptic liver tablets and a bland diet was outlined. According to the doctor's records, he next saw the deceased on July 11, 1934, and the witness read the following from his memorandum made after that visit:

"The patient states 'Last night 8 to 10 p. m. had acute distress about the heart. Think it was indiges-

tion. It was a first attack, felt like the heart was contracting hard. Put finger in throat, vomited, and felt much better. Felt under par today. Ate but little.''

An examination was made by the doctor disclosing ''temperature 99.4, pulse 96, heart normal, blood pressure 119 over 90.'' The doctor again prescribed *nux vomica,* hydrochloric acid and a tonic tablet. On this same day the doctor treated his patient for a small anal fissure, removed some external piles and rendered post-operative treatment several times afterwards. The witness was questioned regarding his examination of Clemans' heart condition on this occasion and said that it was normal.

Dr. Brotherhood, who had practiced medicine for about the same time as Dr. Winslow, some 20 years, testified that the treatment administered in 1932 and in 1934 was proper in view of the symptoms and examination, and that the natural result of indigestion is pains in the stomach and about the heart. This witness was not permitted to answer certain hypothetical questions purported to have been based upon the previous testimony shown in the record and, although error is assigned upon the exclusion of the answers, the matter is not raised in appellant's statements of questions involved, nor argued except by indirection in the briefs.

The principal question before us is whether plaintiff is precluded from recovering on the insurance policy by reason of the concealment of a material fact by the insured amounting to false representation on his part.

It would seem reasonable to suppose that although Clemans thought he had a heart attack in 1934, that he was entitled to rely upon the diagnosis of a reputable physician to whom he made a complete dis-

closure of his symptoms and that after the doctor said that his heart was normal, a true statement was made to the insurer by Clemans when he gave both the date of 1932 as the first visit, and three years ago as the second visit, although it was more correctly, two years ago. The insurance company had every opportunity to investigate its risk and there was no concealment by Clemans of a material fact known to him.

The dates given by Clemans were not warranties under the statutes:

"All statements made by the insured, shall, in the absence of fraud, be deemed representations and not warranties," 3 Comp. Laws 1929, § 12427, and

"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer." 3 Comp. Laws 1929, § 12444.

Taking plaintiff's testimony as true and viewing it in its most favorable light as we must do on his appeal from a directed verdict, we must hold in consideration of that evidence and the reasonable inferences and deductions that may be drawn therefrom, that plaintiff was entitled, on the question of fact thus raised, to a verdict at the hands of a jury. *Sheathelm v. Consumers Power Co.,* 280 Mich. 106.

Defendant relies, among other authorities, on *Bellestri-Fontana* v. *New York Life Ins. Co.,* 234 Mich. 424; *Mutual Life Ins. Co. of New York* v. *Gelcynse,* 241 Mich. 659 (56 A. L. R. 702), *Metropolitan Life Ins. Co.* v. *Carter,* 252 Mich. 432, and *New York Life Ins. Co.* v. *Bahadurian,* 252 Mich. 491.

These cases are distinguishable as follows: In the *Bellestri Case,* the insured consulted a physician a few months before the date of his application, had an X-ray taken of his stomach, and yet he represented that "he had never suffered from any ailment or disease of the stomach or intestines and had not, within five years, consulted with or been treated by a physician."

The *Geleynse Case* permitted the cancellation of a policy because of concealment by the assured of some 15 treatments for stomach trouble within two months before the date of the application, and stating that his last medical attention was some 10 years previously.

The *Carter Case* was another cancellation action based upon the concealment of treatment for tuberculosis during a prison incarceration, the insured having been paroled from custody about five weeks before he applied for his policy of insurance. He had been in prison for four years and spent some weeks in a tuberculosis hospital, and yet he stated that he had not been treated by a physician, etc., within five years.

The facts are not stated in the *Bahadurian opinion,* but it, like the *Carter* and *Geleynse Cases,* properly followed the rule of the *Bellestri Case* by affirming cancellation where the applicant falsely denied having consulted a physician within five years.

The distinction between these cases and the one before us is that Clemans did not conceal a material fact. He stated exactly what had occurred in his physical history and was under no legal obligation to substitute his idea of his indigestion symptoms for the considered diagnosis of his physician, Dr. Winslow.

The error made in date, *viz.,* three years instead of two, did not and could not, under the circum-

stances of the case, assume the dignity of a warranty.

Under our holdings in *Plumb* v. *Penn Mutual Life Ins. Co.*, 108 Mich. 94, *Blumenthal* v. *Berkshire Life Ins. Co.*, 134 Mich. 216 (104 Am. St. Rep. 604), and others cited in *Continental Casualty Co.* .v. *Winsor*, 258 Mich. 118, 124, it is not the duty of an insured in applying for insurance to advise the company in answer to a question concerning his consultation with physicians of every time he had consulted a physician for a temporary indisposition, but only of the times of consultations relative to a serious ailment.

The court was in error in directing a verdict for the defendant. The judgment entered by the circuit court is vacated and the cause is remanded for a new trial, with costs to appellant.

Sharpe and Chandler, JJ., concurred with Bushnell, J.

Potter, J. There is a clear-cut question of fact presented by the record herein which required the submission of the issue to the jury, and the trial court was in error in directing a verdict for defendant.

Mr. Clemans, the insured, was a normal, active man, engaged as a dental technician in Battle Creek. During the four years preceding his death, he had not been away from his office, on account of ill health or inability to work, for a single day. It is shown that on two occasions he complained of indigestion and consulted a physician who prescribed therefor. On both occasions, examination by the physician consulted showed his heart was normal. There was nothing to apprize him of heart disease; but, on the contrary, examination disclosed a normal heart con-

dition and he was advised by the physician consulted his difficulty was indigestion and that was prescribed for. The examining physician of the insurance company, on examination and upon inquiry, could find no heart trouble and considered the applicant for insurance an excellent risk.

It is said deceased died July 22, 1936, of coronary thrombosis which medical dictionaries define as "the formation of a clot in a branch of the coronary arteries which supply blood to the heart muscle, resulting in obstruction of the artery and infarction of the area of the heart supplied by the occluded vessel; called also *coronary occlusion* and *cardiac infarction.*" Dorland's American Illustrated Medical Dictionary (17th Ed.), p. 1404.

There was medical testimony indicating indigestion was not ordinarily a disease but a complaint.

Deceased was apparently a strong, active, young man engaged in the practice of his profession, working 9 or 10 hours a day and more, regarded by the examining physician of the insurance company as "an excellent risk," but who, on two occasions, had consulted a physician who found on examination his heart was normal, but that he had indigestion, which apparently was temporary.

It seems to me, under the circumstances, there was sufficient to take the case to the jury.

Under the law, the statements made by the insured in his application for insurance are, in the absence of fraud, to be deemed representations and not warranties. 3 Comp. Laws 1929, § 12427.

The mere fact the insured in his application did not disclose he had consulted a physician for indigestion does not, it seems to me, bar his right to recover as a matter of law. It may raise a question of fact. 3 Comp. Laws 1929, § 12444. I cannot find from the evidence the failure to disclose his consul-

tation of Dr. Winslow was with an intent to deceive. If he had disclosed fully all the facts which he learned from his consultation with Dr. Winslow, it would not have affected either the acceptance of the risk or the hazard by the insurance company. If the insurance company had had all of the information Dr. Winslow possessed in relation to insured, it undoubtedly would have accepted the risk. While the insured consulted a physician, there is nothing to indicate he suffered from any such sickness as interfered with his usual and ordinary vocation, or when he consulted a physician for the indigestion complained of that he was suffering from an illness which in any way would have affected the probability of the acceptance of his risk by the insurance company. *Pacific Mutual Life Ins. Co.* v. *Cunningham,* 54 Fed. (2d) 927; *Northwestern Mutual Life Ins. Co.* v. *Wiggins* (C. C. A.), 15 Fed. (2d) 646.

Judgment of the trial court is reversed, with costs, and the case submitted to a jury under an appropriate charge.

BUTZEL, J. There were misstatements in the application for insurance. If the insurer shows that the insured sought medical aid contrary to representations in the application, then the burden is on the beneficiary to show the illness was not serious. *Bullock* v. *Mutual Life Ins. Co. of New York,* 166 Mich. 240. In the application, dated February 1, 1936, in answer to the question as to when insured consulted Dr. Winslow, he stated "three years ago," with the date "1932" written over the quoted words in the same blank space. The natural inference from the insurer would be that he only visited the doctor on account of one illness about three years prior to the application. It does not mean that he informed the company that 1932 was the occasion of

his first visit, and three years prior to the application a second one. That this is not the case is shown by the succeeding answers in which he stated he saw the doctor for "anal fissure," and that the duration of the visits was "2–3 days." Insured's misstatements were shown by Dr. Winslow, who testified he attended insured in May, 1932, for duodenal trouble, and that again he treated him in July, 1934, which was about 17 months prior to the date of the application. At that time the doctor, according to his record, found that insured had a slight temperature and heart normal, but also that the "pulse beat rapid when getting on feet from reclining position, not sitting but reclining position." This might signify heart trouble. When the insured consulted the doctor, he stated that he had suffered from acute distress about the heart for two hours the previous evening but thought it was indigestion. He died of heart disease two years later. The duration of the doctor's treatment was not limited to "2–3 days," as stated in the application. When the doctor's memory was refreshed by the reading from a deposition previously given by him and in which he stated that he had attended insured "12 or 15 times, might be 20," he testified that his answer in the deposition was correct. The doctor treated insured for stomach and rectal troubles, the latter consisting of removal of external hemorrhoids and a very simple operation for anal fissure. The doctor testified that the rectal trouble might have required 3 or 4 treatments or possibly 10 or 5. The doctor further testified that at the time of the trouble he was not able to say whether he suspected heart trouble, although he had insured's statement of a sharp seizure of pain about the heart.

If the illness for which the doctor was consulted was not serious, the failure to disclose such attend-

ance is not such a material misrepresentation as to void the policy. *Brown* v. *Metropolitan Life Ins. Co.,* 65 Mich. 306 (8 Am. St. Rep. 894) ; *Pudritzky* v. *Supreme Lodge Knights of Honor,* 76 Mich. 428; *Blumenthal* v. *Berkshire Life Ins. Co.,* 134 Mich. 216 (104 Am. St. Rep. 604). When there is testimony that the illness not disclosed by the application and for which medical aid was sought, was serious, the question of the seriousness becomes one for the jury. *Hann* v. *National Union,* 97 Mich. 513 (37 Am. St. Rep. 365) ; *Rhode* v. *Metropolitan Life Ins. Co.,* 132 Mich. 503. The cases relied upon by defendant are distinguishable, as set forth in Justice BUSHNELL'S opinion.

There are important questions of fact presented and for that reason, there should be a new trial.

FEAD, C. J., and NORTH and WIEST, JJ., concurred with BUTZEL, J.