WOHLFEIL *v.* BANKERS LIFE CO.

1. INSURANCE—APPLICATION FOR REINSTATEMENT OF LIFE INSURANCE—FAILURE TO ANSWER QUESTIONS—INFERENCES—FRAUD.
   Failure on the part of one applying for reinstatement of life insurance to answer question relative to consultation with or treatment by a physician during the preceding five years does not warrant the raising of an inference of fraudulent concealment on the part of the applicant entitling the insurer to avoid liability on the policy after insured committed suicide.

2. SAME—APPLICATION FOR REINSTATEMENT—FRAUD—QUESTION FOR JURY.

In action to recover under life insurance policy, evidence *held*, to present to jury question as to whether insured, in applying for reinstatement, gave a false answer to questions as to whether or not he was then in good health and whether or not he had been ill or injured within five years.

3. SAME—APPLICATION FOR REINSTATEMENT—FRAUD—TESTIMONY OF PHYSICIAN.

In beneficiary's action against insurer under a life insurance policy, testimony of doctor who had treated insured several times about six months prior to the time he had made application for reinstatement, which testimony does not disclose the character of the condition or ailment for which treatment was given and record fails to disclose the nature or extent of the treatment or remedy prescribed, if any, was insufficient to establish conclusively the falsity of the insured's answer to questions relative to consultation with or treatment by a physician within the preceding five years in the absence of evidence that insured had suffered an impairment of health of a serious nature that had a material bearing upon the truth or falsity of such answers.

4. WITNESSES—PHYSICIAN AND PATIENT.

A doctor may not testify concerning the information which he had obtained incident to his professional relation with one insured under a life insurance policy over objection of beneficiary under the policy (3 Comp. Laws 1929, § 14216).

5. INSURANCE—ANSWERS IN APPLICATION FOR REINSTATEMENT—NATURE OF ILLNESS—FRAUD.

If ailment suffered by insured which was not disclosed by his application for reinstatement of life insurance was not of a serious character, the insurer would not have been defrauded and beneficiary's right to recover not barred.

6. SAME—REINSTATEMENT—FRAUD—PROOF OF LOSS.

Beneficiary's right to recover under policy of life insurance on her deceased husband, in which insurer interposed defense that insured had made false statements in application for reinstatement, was not defeated as a matter of law by her statement in proof of loss that her husband had been ill with ulcers of the stomach.

7. SAME—REINSTATEMENT—FRAUD—BURDEN OF PROOF.

In beneficiary's action under policy of life insurance in which insurer defended on the ground that insured had made false answers in his application for reinstatement, after insurer

had made a showing that within the five-year period next preceding his application he had been in a hospital and had been treated by a doctor, burden was then on beneficiary to show that the treatment received was for some ailment which did not tend seriously to weaken or undermine the insured's health.

8. SAME—REINSTATEMENT—FRAUD—EVIDENCE—QUESTION FOR JURY.
In beneficiary's action under policy of life insurance in which insurer claimed insured had made false answers in an application for reinstatement, evidence, regardless of burden of proof, *held*, sufficient to present question for jury as to seriousness of his ailment where defendant showed insured had been in hospital and had received treatment from a physician within five-year period and plaintiff showed insured had continued to do his regular duties as janitor, involving heavy work, was not on a diet but was subsisting on same food as other members of the family without any special preparation, and peculiarity in his manner of walking was due to a previous accident resulting in deformity and broken bones in one foot.

9. WITNESSES—PRIVILEGED COMMUNICATIONS—PHYSICIAN AND PATIENT.
In action by beneficiary under life insurance policy, where plaintiff objected to testimony by doctor as to nature of ailment as to which he had received confidential information, sustaining of such objection was not error notwithstanding plaintiff had previously signed proof of loss containing authorization to physician to disclose such information and testify thereto (3 Comp. Laws 1929, § 14216).

10. SAME—PRIVILEGED COMMUNICATIONS—PHYSICIAN AND PATIENT—PROOF OF LOSS.
The law relative to privileged communications between physician and patient which is administered by a trial court is provided by statute and may not be changed or frittered away by stipulation, contained in the proof of loss provided by insurer, authorizing the physician to testify as to confidential matters disclosed by the patient to his physician or learned by him through report submitted to him by hospital at which insured was treated (3 Comp. Laws 1929, § 14216).

11. APPEAL AND ERROR—SAVING QUESTIONS FOR REVIEW.
Error, if any, in failure to give appellant four days' notice of taxing costs in trial court *held*, not prejudicial, where no complaint is made that they were unjust or excessive and the matter was not brought to the attention of the trial court in appellant's motion for a new trial.

SHARPE, C. J., and BOYLES and BUTZEL, JJ., dissenting.

Appeal from Livingston; Collins (Joseph H.), J. Submitted October 24, 1940. (Docket No. 136, Calendar No. 41,378.) Decided February 7, 1941.

Assumpsit by Stella M. Wohlfeil against Bankers Life Company, an Iowa corporation, to recover on an insurance policy issued on the life of Fred W. Wohlfeil, deceased. From verdict and judgment for plaintiff, defendant appeals. Affirmed.

*Jay P. Sweeney* (*Don W. Van Winkle,* of counsel), for plaintiff.

*Shields & Smith,* for defendant.

NORTH, J. This is a suit to recover on an insurance policy issued by defendant company on the life of Fred W. Wohlfeil, now deceased. Plaintiff, the beneficiary named in the policy, on trial by jury had verdict, and judgment was entered thereon. The defendant has appealed.

The policy was issued in December, 1934, but it lapsed by reason of nonpayment of premiums. On February 7, 1939, the insured made an application for reinstatement. As a result of the application the policy was reinstated. Thereafter and on July 10, 1939, the insured committed suicide. The defense urged is that by reason of false statements contained in his application for reinstatement the insured fraudulently obtained restoration of his policy.

At the conclusion of the testimony defendant made a motion for a directed verdict on the grounds: (1) that the testimony disclosed the insured had secured reinstatement of the policy by means of fraudulent and untruthful statements and fraudulent omission of facts; (2) that the uncontradicted testimony of

Doctor Hill conclusively proved insured's statements incident to reinstatement were false and fraudulent; and (3) that after defendant had produced evidence that the insured had been sick and treated numerous times during the five-year period next preceding reinstatement of his policy, plaintiff failed to meet the burden of proof by showing that such sickness was not of a serious nature. Appellant's principal claim on this appeal is that the trial court erred in denying defendant's motion for a directed verdict and in adhering to the same ruling by denying defendant's motion for judgment *non obstante veredicto* and also denying defendant's motion for a new trial. In short, defendant contends that the verdict was contrary to uncontradicted testimony, or at least was contrary to the great weight of evidence.

The following questions and answers were contained in the application which the insured made for reinstatement February 7, 1939.

"5. Are you now in good health? Yes. * * *

"7. Have you been ill or injured within five years? No."

The following questions contained in the application were not answered by the insured.

"8. Have you consulted, been treated or attended by a physician, surgeon, or practitioner within five years?

"9. If so, set out particulars below as to 7 and 8 or either."

It is appellant's claim that the insured's answers to questions 5 and 7 were false, and that the insured's failure to answer questions 8 and 9 constituted fraudulent concealment. Appellant's contention as to fraudulent concealment is not tenable. "A question not answered raises no inference for

or against the person signing the application. It is the same, in effect, as if no question had been asked.'' *Briesenmeister* v. *Knights of Pythias,* 81 Mich. 525, 536. While there is testimony in the record which tends strongly to indicate that the insured's answers to questions 5 and 7 above quoted were false, still there is other testimony tending to support a contrary conclusion.

Under the record appellant's contention that Doctor Hill's testimony conclusively establishes the falsity of the insured's answers cannot be sustained. The doctor's professional services to the insured preceded by some months the application for reinstatement and there is no testimony disclosing the character of the condition or ailment which caused the insured to consult Doctor Hill, nor does the record disclose the nature or extent of the treatment or remedy, if any, which the doctor prescribed. It would be pure speculation, in so far as the testimony of Doctor Hill, a witness for the defendant, is concerned, to attempt to determine whether at the time professional services were rendered the insured was suffering from any impairment of health which was of such a serious nature that it had a material bearing upon the truth or falsity of the insured's answers in his application for reinstatement made in February, 1939. And this is true, we think, notwithstanding Doctor Hill testified that in July and August, 1938, when he treated the insured, the latter ''was ill.'' This is not conclusive against plaintiff because it is not revealed whether the illness was only slight and inconsequential, or of a serious character.

John Cotter, another of defendant's witnesses, worked as a janitor at the same schoolhouse where the insured also worked as a janitor. They were so employed from the spring of 1936 until the summer of 1939. This witness testified that the insured

"was not well," and that the insured told him he had been to Ann Arbor, apparently to a hospital, and that "he was all washed up." The witness further testified that the insured staggered when he walked, and "he just couldn't seem to handle himself." But on direct examination this witness also testified:

"*Q.* Did he do as heavy work in February as he had previously, when you knew him?

"*A.* Yes, sir.

"*Q.* What kind of work did he do in February?

"*A.* Mopping and sweeping.

"*Q.* Did you and Mr. Metz [another janitor] help him any with his work?

"*A.* No, sir.

"*Q.* Did he do heavy work or light work?

"*A.* His work, some of it was light. His sweeping was light work, it was not so awful hard. Mopping is hard work."

On cross-examination this witness gave the following testimony:

"*Q.* Did you know that Fred Wohlfeil was injured in 1934 by a fall in the restaurant over here, I think the Family Restaurant?

"*A.* I didn't know that.

"*Q.* Did you know as a result of this fall, he hit his heel, he had a broken bone in the heel of his foot?

"*A.* No, sir.

"*Q.* If that were so, if it developed in this case that he did have such an injury in 1934, and a bone in his heel was broken, then this shuffle, as you say, might be attributed to that, might it not?

"*A.* It is possible.

"*Q.* Now, as a matter of fact, you say that he staggered. Isn't it true that he shuffled? That is what you meant, isn't it?

"*A.* He just couldn't balance himself, he was all over.

"*Q.* Because of perhaps some injury to his heel?
"*A.* It might have been."

Joseph Metz, another witness called by defendant, was also a janitor at the school where the insured was employed. In its general purport the testimony of this witness is like that of the other janitor, John Cotter. But it may be noted that this witness testified that the insured told the witness "that over to Ann Arbor they thought he had an ulcer. * * * It was in the fall of 1938, as near as I can recall events, when he told me he had an ulcer. * * * He thought he had an ulcer, he didn't know. * * * That he was on a diet." And the witness further testified that the insured's duties included shoveling coal for the school heating plant and shoveling snow from sidewalks, as well as other janitor work; and he testified that the insured continued to work until about a week before his death, and that during this intervening week the insured was on a vacation.

Four other lay witnesses testified in behalf of defendant. We forego recapitulation of their testimony because it is of like character and only cumulative of the testimony given by witnesses Cotter and Metz.

In rebuttal the testimony of plaintiff and her daughter, Stella M. Wohlfeil, was taken. From this testimony it appeared that there had been a peculiarity or a difference in the manner in which the insured walked from the time of his accident in 1934; that the insured was employed seven nights a week at his job as a janitor and fireman at the school building; that in addition to this at certain times he did extra work in a meat market during the day hours; that while he was not a robust man, he continued at his employment until a few days prior to his death; that he ate the same food as other mem-

.bers of the family, which was of the ordinary variety, that his food "was not especially prepared for him in any way," and that his weight of approximately 150 pounds did not vary materially during the latter years of his life. The daughter testified that her father told her he was going to Ann Arbor for an examination "to just see if there was anything wrong with him." Plaintiff testified: "I never saw him [the insured] take any medicine that he took right along. Outside of a cold or stomach-ache I never saw him take any medicine continually;" that from the spring of 1936 when the insured began to work as a janitor up to the time of his death he drew his pay regularly each month; that when her husband went to Ann Arbor he went "for an examination. * * * His stomach was upset. It hadn't been that way very long. He complained some things he ate bothered him. * * * It is only a short time that his stomach was upset prior to August, 1938. Maybe a couple of weeks prior to August. He had not had any stomach trouble before that to my knowledge. Stomach trouble didn't continue after August, 1938. * * * He told me what he went to see Dr. Hill for was on account of his stomach;" and further, that when making out the statement of her claim for this insurance she told defendant's representative that her husband "went to Ann Arbor for a checkup." In plaintiff's proof of death question No. 8 read: "Has deceased had any illness during the past five years? Nature of illness." Plaintiff's answer was: "Ulcers of stomach, 1937 [duration] 3 days, [attended by] Dr. H. C. Hill;" but in this connection plaintiff testified: "I told him [defendant's representative] it was questionable [whether the insured had ulcers of the stomach], and that the report had been he did not have them, but that's the illness he wrote in there, and he had been to Ann Arbor three different times for a checkup thoroughly."

Without quoting further from the testimony, we are satisfied from our review of the whole record that a question of fact was presented as to whether the insured's answers to questions 5 and 7 hereinbefore quoted were true or false. The testimony of Doctor Hill pertained to the insured's condition at a time some months prior to the date of the application for reinstatement; and since the doctor could not testify concerning the information he had obtained incident to his professional relation with the insured, it is not disclosed whether the insured's ailment, if any, was of a serious character or otherwise. If it was not of a serious character, defendant was not defrauded and plaintiff's right to recover is not barred. Nor do we think the record is such that it can be said the overwhelming weight of the evidence establishes defendant's contention that the insured was not in good health on February 7, 1939, or that he had suffered a serious illness within five years next preceding that date. Nor, in the light of all of the testimony, can it be said as a matter of law that plaintiff's right to recover is defeated in consequence of her statement in the proof of loss signed by her that her husband had been ill with ulcers of the stomach.

In reaching our conclusion in this case we are mindful that after defendant had made a showing that within the five-year period next preceding his application for reinstatement the insured had been in the hospital at Ann Arbor and that he had been treated by Doctor Hill, the burden was then upon plaintiff to show that any treatment the insured received was for some ailment which did not tend *seriously* to weaken or undermine the insured's health. *Bullock* v. *Mutual Life Ins. Co.,* 166 Mich. 240. But on this phase of the case there was testimony in behalf of the plaintiff that during the period in question the insured had worked continuously,

that at the time he was reinstated he was doing certain work of a heavy or laborious character, that he was not on a diet but was subsisting on the same food as the other members of his family without there being any special preparation of his food, and that the insured's manner of walking, which some thought indicated a decline in his physical condition, was due to an accident previously suffered and which resulted in deformity and broken bones in one of the insured's feet. Taken as a whole, the record presented an issue of fact for jury decision, regardless of the burden of proof in the particular noted being upon plaintiff.

The blank form of proof of loss which was signed by plaintiff contained the following: "Do you authorize the above named [Dr. H. C. Hill] or any other physician or practitioner consulted by the deceased or by whom he was attended during the last five years and who has information regarding the personal history, physical or mental condition of the deceased, to disclose the same and testify thereto?" To this question plaintiff subscribed the answer "Yes." Notwithstanding this concession obtained from plaintiff, under the circumstances it was not error on the part of the trial court to sustain objections made by her to any testimony of Doctor Hill as to matters of a privileged character. The law as administered by the trial court is provided by the statute. 3 Comp. Laws 1929, § 14216 (Stat. Ann. § 27.911). It cannot be changed or frittered away in the manner attempted in this case. *Gilchrist* v. *Mystic Workers,* 188 Mich. 466 (Ann. Cas. 1918C, 757). There was no prejudicial error in any of the rulings of the trial court which prevented Doctor Hill from testifying relative to the nature of insured's illness or as to what Doctor Hill learned through reports submitted to him by the University Hospital at Ann Arbor.

There is no merit to appellant's complaint of the manner in which costs were taxed in the trial court; at least it does not amount to prejudicial error. While it appears that the defendant was not given four days' notice of taxing the costs, still there is no complaint that as taxed such costs were unjust or excessive. And, further, defendant did not bring this matter to the attention of the trial court in its subsequent motion for a new trial.

The judgment entered in the circuit court is affirmed, with costs to appellee.

BUSHNELL, CHANDLER, McALLISTER, and WIEST, JJ., concurred with NORTH, J.

BUTZEL, J. (*dissenting*). I believe the case should be reversed. Defendant proved by a preponderance of the evidence that plaintiff's decedent made a false representation in his written application for reinstatement of February 7, 1939, in stating that he was in good health and had not been ill within the last five years.

"The health of an applicant for life insurance is of vital importance to the insurer and questions to elicit information on the subject are proper to ask and should be truthfully answered." *Mutual Life Insurance Co.* v. *Geleynse,* 241 Mich. 659, 663 (56 A. L. R. 702).

"Good health" as used in an insurance policy has frequently been defined by this court to mean that the applicant is free from any disease that would seriously affect the general soundness of the system, and that he has not been attended by a physician for a serious ailment. *Blumenthal* v. *Berkshire Life-Insurance Co.,* 134 Mich. 216 (104 Am. St. Rep. 604); *Ligrow* v. *Abraham Lincoln Life Insurance*

*Co.,* 260 Mich. 444; *Prudential Ins. Co. of America* v. *Ashe,* 266 Mich. 667; see, also, annotations in 40 A. L. R. 662 and 100 A. L. R. 362.

The proof of death, subscribed and sworn to by plaintiff, states that decedent had been ill during the five years; that the nature of the illness was ulcers of the stomach in 1937; the duration three days; and that Dr. Hill was the attending physician, whom plaintiff authorized to testify.

Defendant opened the proofs under the affirmative defense. Dr. Harold C. Hill, physician of deceased, testified that his records disclosed that he had treated the assured 10 times during July and August of 1938, and that he had treated him at other times during the period covered by February, March, and April of 1939, and for which he had no record. February, 1939, was the month in which decedent signed the application for reinstatement. Plaintiff's attorneys objected to Dr. Hill testifying as to the nature of assured's illness, as well as to the introduction of a report from the University Hospital at Ann Arbor sent to Dr. Hill after decedent had been at the hospital. The report was dated August 27, 1938. The trial court upheld plaintiff's objections and defendant's evidence was excluded. This ruling was correct. See *Gilchrist* v. *Mystic Workers,* 188 Mich. 466 (Ann. Cas. 1918C, 757).

Defendant then proceeded to examine six disinterested witnesses to elicit testimony as to Fred Wohlfeil's physical condition during the five-year period preceding February 7, 1939. Without exhaustively reviewing the testimony of each witness in detail, the substance of their testimony was that the deceased had been to the Ann Arbor hospital; that he staggered when he walked; that he appeared to be "fagged out;" he was not able to do a man's

work; he said he was on a diet; he said he was doctoring with Dr. Hill and had been to the University Hospital in May and June and August of 1938; he told the head janitor that he had an ulcer of the stomach; said he could not eat certain foods and had to be on a light diet; his face was thinner and he seemed to be run down; he had been in failing health for two or three years; he complained about not feeling able to work. Joseph Metz, the head janitor, testified:

"He mentioned to me something about an ulcer at some time. That was in May or June of 1938. I can't remember the words he used when he referred to the ulcer. We were talking there one night. He was telling me he had been over to Ann Arbor and I says, 'Fred, what did they find out?' He says, 'Well,' he says, 'the report will come back to Hill, but,' he says, 'what I can get out of it,' he says, 'I have got an ulcer.' It was at the same time he referred to his having spinal trouble. He complained to me about his stomach. He said he couldn't eat certain foods. He had to be on a light diet. I can't remember when I had that conversation with him. It was something about this same time, May or June, and was within a year prior to his death."

Defendant went as far as it could in establishing the fact that the deceased had not been in "good health" at the time of making application for reinstatement, and that he had been ill within the previous five years. After establishing this *prima facie* case of misrepresentation, it became incumbent upon plaintiff to prove that the illness was not of a serious nature. *Bullock* v. *Mutual Life Ins. Co.*, 166 Mich. 240; *Rickert* v. *Travelers Ins. Co. of Hartford, Conn.*, 282 Mich. 538.

To meet this burden, plaintiff and her daughter testified. Plaintiff explained that the statement in the proof of death, signed and sworn to by her, which indicates that deceased had suffered with ulcers of the stomach within the previous five years, had been filled in by the company's agent. She testified that she informed him that "my husband had told me that they thought he might have ulcers, so he went to Ann Arbor for a checkup, but when he came back they told him he didn't have it." She and her daughter also testified that deceased had not lost any time from work on account of ill health; that his staggering walk was the result of a previous injury to his heel of which the company had notice; and that he ate the same food as the rest of them. However, on cross-examination, plaintiff admitted that deceased was ill when he went to Ann Arbor; that his stomach was upset; that he complained that some things he ate troubled him. She further testified that she was away from home a part of this period attending to her duties at the State Sanitarium at Howell, Michigan, where she was employed as a practical nurse. Her daughter testified that deceased complained of stomach trouble more than usual in the summer of 1938, but she "wouldn't say it was serious." She also testified that the first time he went to Ann Arbor, he was in the hospital for three days.

A real illness, not merely an upset stomach, prompts a person to visit a physician professionally 10 times within 60 days and to make trips to the University Hospital at Ann Arbor at least three times and one time remaining there three days according to the testimony introduced by plaintiff. When decedent stated that he had not been ill for five years, he made a false representation.

Viewing the evidence in its most favorable light for plaintiff, as we must on this appeal, I feel that plaintiff failed to meet the burden of proof and that the evidence preponderates for defendant. Judgment should be reversed and a new trial granted.

SHARPE, C. J., and BOYLES, J., concurred with BUTZEL, J.