Leonard C. MILLER, Plaintiff,

v.

PACIFIC MUTUAL LIFE INSURANCE COMPANY, a California corporation, Defendant.

Civ. A. No. 1767.

United States District Court, W. D. Michigan, S. D.

Nov. 12, 1954.

---

3. Brown v. Fletcher's Estate, 210 U.S. 82, 28 S.Ct. 702, 52 L.Ed. 966.

Warner, Norcross & Judd and Harold S. Sawyer, Jr., Grand Rapids, Mich., for plaintiff.

Uhl, Bryant, Slawson & Wheeler and Gordon B. Wheeler, Grand Rapids, Mich., for defendant.

STARR, Chief Judge.

Beneficiary brought action against insurer on life policy and jury returned verdict for the plaintiff beneficiary. The insured died December 14, 1950, and the defendant denied liability on the ground of alleged fraud and misrepresentation by the insured in his application for the policy.

In preparation for the trial of this case, the defendant gave notice that it would take the depositions of Dr. A. E. Brown and Dr. Arthur W. Robinson upon oral examination. The notice stated that the proposed depositions would relate, among other things, to examinations of the insured, Ben H. Newmark, by Dr. Brown and Dr. Robinson, or to information concerning the insured acquired by them in their professional capacities. The plaintiff then filed a motion for an order limiting the scope of the proposed depositions of the two doctors, on the ground that whatever information they had gained regarding the insured was solely through their physician-patient relationship with him while acting in their professional capacities, and that such information was privileged and constituted privileged communications under Comp.Laws Mich.1948, § 617.62.[1] The plaintiff's motion to limit the scope of these depositions was submitted upon briefs, and on November 5, 1953, this court filed its opinion granting the plaintiff's motion and limiting the scope of the doctors' depositions. Miller v. Pacific Mut. Life Ins. Co., D.C., 116 F.Supp. 365. Reference is hereby made to that opinion, as the court's holdings and conclusions therein set forth have a direct bearing upon many of the questions presented by the defendant's present motion for a new trial.

The case was subsequently tried on the merits before a jury, which returned a verdict for the plaintiff in the amount of $28,868, which included the face amount of the insurance policy and accumulated interest. Judgment was entered for the plaintiff on the jury's verdict. The defendant has filed a motion for a new trial, setting forth seven reasons as grounds for the granting of its motion. The defendant's motion for a new trial is filed in pursuance of Rule 59, Federal Rules of Civil Procedure, 28 U.S.C.A., which provides:

"A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."

The authorities generally recognize that a new trial should not be granted where it is obvious that it would serve no purpose except to relitigate issues which have been correctly and finally determined. In considering a motion for a new trial the court must determine whether or not the reasons advanced indicate that a substantial injustice has been done by improper action on the part of the court or jury, and also indicate that a new trial will amount to more than a mere relitigation of the issues. Furthermore, in considering the

1. Section 617.62 provides:
"No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: Provided, however, That in case such patient shall bring an action against any defendant to recover for any personal injuries, or for any malpractice, if such plaintiff shall produce any physician as a witness in his own behalf, who has treated him for such injury, or for any disease or condition, with reference to which such malpractice is alleged, he shall be deemed to have waived the privilege hereinbefore provided for, as to any or all other physicians, who may have treated him for such injuries, disease or condition: Provided further, That after the decease of such patient, in a contest upon the question of admitting the will of such patient to probate, the heirs at law of such patient, whether proponents or contestants of his will, shall be deemed to be personal representatives of such deceased patient for the purpose of waiving the privilege hereinbefore created."

present motion the court must view the evidence and all the inferences which may reasonably be drawn therefrom in the light most favorable to the plaintiff, against whom the motion is directed. Van Sant v. American Express Co., 3 Cir., 169 F.2d 355, 365; Pioneer Paper Stock Co. v. Miller Transport Co., D.C., 109 F.Supp. 502, 504; 10 Cyclopedia of Federal Procedure, 3d Ed., § 34.07, p. 79. In Garrison v. United States, 4 Cir., 62 F.2d 41, 42, Judge Parker said: "Verdict may be set aside and new trial granted, when the verdict is contrary to the clear weight of the evidence, or whenever in the exercise of a sound discretion the trial judge thinks this action necessary to prevent a miscarriage of justice."

■■■ A motion for a new trial is addressed to the sound discretion of the trial court. In Murphy v. United States District Court for Northern District of California, Southern Division, 9 Cir., 145 F.2d 1018, 1020, the court said: "The granting of a new trial is discretionary with the court and subject to no fixed rule except a consideration of what is just." In American Cooler Co., Inc., v. Fay & Scott, D.C., 20 F.Supp. 782, 783, the court said:

"The court or another jury might take another view of the matter, but under our procedure that is not the question. It is not sufficient ground for a new trial that a verdict is merely against the preponderance of the testimony. It must be so manifestly and palpably against the evidence in the case as to compel the conclusion that the verdict is contrary to right and justice."

■ The purpose of a motion for a new trial is to give the court the opportunity to reexamine the entire factual situation and applicable law, and determine whether or not the verdict reached by the jury was reasonably justified by the facts. In Garrison v. United States, supra, Judge Parker further said:

"He (judge) may * * * set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice."

See also English v. Mattson, 5 Cir., 214 F.2d 406; Werthan Bag Corp. v. Agnew, 6 Cir., 202 F.2d 119; Jennings v. Murphy, 7 Cir., 194 F.2d 35; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350. In 10 Cyclopedia of Federal Procedure, 3d Ed., § 34.04, at page 69, it is stated:

"Courts are reluctant to grant new trials or rehearings and will not do so unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done."

Rule 61 of the Federal Rules of Civil Procedure provides:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

■ The reasons which the defendant sets forth in support of its motion for a new trial should be considered in the

light of above Rule 61. The defendant's first ground for a new trial is that "the court erred in instructing the jury that answers in an application for life insurance should be liberally construed in favor of the insured, for the reason that there was no ambiguity or uncertainty in the insured's answers in the instant case, and this instruction was highly prejudicial." In making this contention the defendant has improperly taken a sentence of the court's instruction out of context. In McFadden v. Baltimore & O. R. Co., D.C., 95 F.Supp. 255, 256, the court said:

"It is not difficult to destroy almost any charge or instructions of the court to the jury by isolating certain limited expressions therein, but the charge must be considered as a whole with a view of determining the impression conveyed thereby to the jury. * * * Portions of a charge should not be scrutinized apart from their context as isolated verbal phenomena."

In 9 Cyclopedia of Federal Procedure, 3d Ed., § 31.88, page 382, it is stated:

"The question on review is whether, on the whole, the charge gave the jury the necessary legal instruction and whether it presented to them fairly questions which they had to decide, and, if so, there is no reversible error even though some portions of the charge might have been improved by polishing and other portions wholly deleted."

■ In particular, the defendant objects to the court's statement that "under the law of Michigan the questions and answers in an application for insurance are to be construed liberally in favor of the insured." That sentence in the court's instructions to the jury must be considered in connection with the remainder of that paragraph and in connection with the paragraphs preceding and following it. These several paragraphs, when read and considered together, properly stated the applicable law of Michigan and were proper instructions to the jury. In Northwestern Nat. Life Ins. Co. v. Nalbant, 6 Cir., 119 F.2d 725, the appellate court for this circuit said at page 728: "The rule in Michigan is that questions and answers in an application for life insurance should be construed liberally in favor of the insured. McKinney v. Liberty Life Insurance Co. of Illinois, 263 Mich. 490, 248 N.W. 881." See also Perry v. John Hancock Mutual Life Ins. Co., 143 Mich. 290, 294, 106 N.W. 860.

As the sentence in the court's instruction to which the defendant objects is taken out of context, and as the instructions, when considered as a whole, properly stated the established law of Michigan, the court concludes that the first reason or ground advanced by the defendant in support of its motion for a new trial is without merit.

■ As its second ground for a new trial the defendant states: "The court erred in denying defendant's motion for a directed verdict, for the several reasons therein stated." An examination of the record of the trial of this case indicates that the defendant stated four reasons in support of its motion for a directed verdict. Its first reason was "that the plaintiff refused the request of the defendant for permission to examine the hospital records and Dr. Thosteson's records in connection with the proofs of death." This contention by the defendant is without merit, as the law is established that the statutory physician-patient privilege would make the statements of Dr. Thosteson in the hospital records, as to the nature of the insured's illness and the treatment accorded him, inadmissible. The hospital records could only be used to show when the insured entered the hospital, how long he was there, and when he was discharged, and there is no dispute in this case as to those facts. This contention by the defendant is fully answered by the court's opinion filed No-

vember 5, 1953, on the plaintiff's motion to limit the scope of certain doctors' depositions. Furthermore, it is stated in 8 Wigmore on Evidence, 3d Ed., § 2382, at page 820:

> "The (physician-patient) privilege is universally agreed to include the physicians' entries in medical records of a *hospital.*"

The second reason which the defendant advanced in support of its motion for a directed verdict was that "under the uncontradicted evidence in the case it conclusively appears, as a matter of law, that false statements were made in the application for the policy and that those false statements were made with actual intent to deceive." This second contention by the defendant must be considered in connection with Comp.Laws Mich.1948, § 522.17, which provides:

> "The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with *actual intent* to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

 It is clear that under the facts and circumstances in the present case the question as to the intent of the insured to deceive must be considered in connection with what facts he failed to disclose. That is, the insured was not obliged to disclose any ailments or medical treatments which involved only slight or temporary indispositions or routine check-ups. In Rickert v. Travelers Ins. Co. of Hartford, Conn., 282 Mich. 538, 546, 547, 276 N.W. 546, 550, in reversing the trial court and remanding the case for a new trial, Justice Butzel said:

> "If the illness for which the doctor was consulted was not serious, the failure to disclose such attendance is not such a material misrepresentation as to void the policy.

(Authorities cited.) When there is testimony that the illness not disclosed by the application and for which medical aid was sought, was serious, the question of the seriousness becomes one for the jury." (Authorities cited.)

In a concurring opinion that a new trial should be granted in the Rickert case, Justice Bushnell said:

> "Under our holdings * * * it is not the duty of an insured in applying for insurance to advise the company in answer to a question concerning his consultation with physicians of every time he had consulted a physician for a temporary indisposition, but only of the times of consultations relative to a serious ailment."

In Aetna Life Insurance Company of Hartford, Conn. v. Harper, 293 Mich. 385, 387, 292 N.W. 340, the court said:

> "Death has closed the lips of the insured, and the law closes the lips of the doctor as to the nature of the several consultations had, and it is not permissible to supply the undisclosed by inference of misrepresentation based on mere conjecture in an instance where it is equally reasonable to infer the contrary. What ailment or disease, if any, of the insured was the subject matter of the consultations? We are not informed. If it was for some ailment not specified in the question in the application, then there was no misrepresentation."

In Blumenthal v. Berkshire Life Insurance Co., 134 Mich. 216, at page 218, 96 N.W. 17, at page 18, the court said:

> "The law is settled that in a representation, contained in an application for insurance, that the assured is in good health, or that he has not been subject to illness, or that he has not been attended by a physician or consulted one professionally, the answer is to be con-

strued as meaning, in the one case, that he has not suffered an illness of a serious nature, tending to undermine the constitution, and that a state of health is freedom from disease or ailment that affects the general soundness or healthiness of the system seriously."

See also Ranger, Inc., v. Equitable Life Assur. Soc. of United States, 6 Cir., 196 F.2d 968, 974, 975; New York Life Insurance Co. v. Newman, 311 Mich. 368, 18 N.W.2d 859; Wohlfeil v. Bankers Life Co., 296 Mich. 310, 319, 296 N. W. 269.

 It is clear that the question as to whether the insured intended to deceive was a question to be determined by the jury from the evidence regarding what facts he failed to disclose; that is, did he fail to disclose a serious illness or hospital treatment for a serious illness, or did he merely fail to disclose some slight or temporary indisposition? If in good faith he did not disclose some slight or temporary indisposition which he was not legally required to disclose, it cannot be held as a matter of law that his statements were made with "actual intent to deceive." In the case of Rhode v. Metropolitan Life Insurance Co., 132 Mich. 503, at page 506, 93 N.W. 1076, the Supreme Court of Michigan said:

"It is also claimed that the statement of the applicant that he had not been attended by physicians is shown to be materially false. But we think the question was fairly submitted to the jury as to whether the ailment for which the applicant was treated was a serious ailment, or a mere temporary difficulty."

In the case of Bernadich v. Bernadich, 287 Mich. 137, 144, 145, 283 N.W. 5, 8, the court said: "Whether misrepresentations or false statements void an insurance policy depends upon the intent to defraud and this is a question of fact for the jury." See also Wohlfeil v.

Bankers Life Co., 296 Mich. 310, 296 N.W. 269.

 This question relative to whether or not the insured actually intended to deceive the defendant was fully and properly covered by the court's instructions to the jury. In other words, this court still is of the opinion that under the evidence in this case it did not conclusively appear that the insured's statements in his application were made with "actual intent to deceive," and that the question as to whether the statements were made with such intent was for jury determination.

 The defendant's third reason in support of its motion for a directed verdict was "that false statements were made in the application for the policy, and that such false statements did materially affect the assumption of the risk by the insurer." In considering this contention it should be kept in mind that the falsity of any statement in an application for an insurance policy shall not bar the beneficiary's right to recover thereunder unless such false statement was made with actual intent to deceive, or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer. See Comp.Laws Mich.1948, § 522.17 quoted above. In this contention the defendant erroneously assumes as a fact that the insured's statements in his application were materially false and erroneously assumes as a fact that such alleged false statements materially affected the hazard assumed by the insurer. The court is convinced that the questions as to whether the insured's answers in his application were materially false, whether they were made with actual intent to deceive, and whether they materially affected the risk assumed by the defendant were, under the evidence and the law of Michigan, questions of fact which were properly submitted to the jury for its consideration and determination. The evidence in the present case indicates that the defendant company was

probably suspicious of Newmark as an insurance risk because he was greatly overweight. Its suspicion is indicated by the fact that it had him examined by two of its doctors, that the examinations were made at different times, and that each doctor made his examination independently of the other. The defendant's suspicion of the risk is further indicated by the fact that it charged the insured a higher-than-standard premium rate, apparently because it recognized that it was assuming an increased risk or hazard in insuring an overweight man. It should be noted that the defendant's doctors found the insured to be in good health except for his excessive weight. It has been held that the report of an insurance company's physician is admissible in evidence for the purpose of showing the condition of the insured's health. See Perry v. John Hancock Mutual Life Insurance Co., 143 Mich. 290, 106 N.W. 860; Rhode v. Metropolitan Life Insurance Co., 129 Mich. 112, 88 N.W. 400. The evidence relative to the insured's good health and his continuation of his usual physical activities tends to rebut any inference that his own consultations with physicians were regarding serious illness. Furthermore, it might reasonably be argued that this testimony as to the insured's apparent good health and his continued physical activities indicated that he personally consulted with the physicians merely for some slight or temporary indisposition or for assurance that he was in good health. The primary question in the present case was whether or not the policy in question was voided by the deceased's having failed to state that he had visited the Mayo clinic and that he had had consultations with Dr. Thosteson. The evidence as to the insured's apparent good health has an important bearing on the question as to the purpose of his consultations with the physicians; that is, on the question as to whether the consultations were for some serious illness or

merely for some slight or temporary indisposition. The court properly instructed the jury to consider the evidence and determine as questions of fact whether the insured's answers were false, whether they were made with actual intent to deceive, and whether they materially affected the acceptance of the risk and the hazard assumed by the defendant.

The defendant's fourth reason in support of its motion for a directed verdict was "that the false statements contained in the application did materially affect the hazard assumed by the defendant insurer." This contention is based on the erroneous premise that the statements did affect the hazard assumed. In considering this fourth contention it should be kept in mind that the defendant company had the insured examined by two doctors and charged him a higher-than-standard insurance premium. The evidence clearly indicates that the defendant recognized that Newmark was greatly overweight and was not a good insurance risk, but that it accepted the risk and knowingly assumed the hazard by charging an increased premium. The evidence presented questions of fact for jury determination as to whether the insured's statements materially affected the acceptance of the risk or the hazards assumed. Under all the facts and circumstances it cannot be said as a matter of law that the insured's statements in his application did materially affect the hazard assumed by the defendant insurer.

The court still is of the opinion that under all the facts and circumstances in this case the defendant's motion for a directed verdict made in the course of the trial was properly denied, and that the court's instructions to the jury fully and properly presented the questions of fact and the law applicable thereto. Therefore, the defendant's second ground for a new trial must be held to be without merit.

As its third ground for a new trial the defendant alleges that "there was no evidence to support a finding that the false answers of the insured in his application were not made with intent to deceive, and the verdict necessarily based on such finding was against the clear and manifest weight of the evidence." This contention assumes the erroneous premise that there had to be direct and positive evidence that the answers of the insured in his application were not made with actual intent to deceive. Intent in many instances cannot be shown by positive and direct evidence, but is something which may properly be inferred from the evidence and the facts and circumstances involved. In the present case the insured is dead, and his intent can only be established by inferences drawn from the testimony and the surrounding facts and circumstances. There was evidence and there were facts and circumstances from which the jury could properly have drawn the inference that the insured's answers in his application were not made with actual intent to deceive. The fact that a court might have drawn a different inference is immaterial. The jury as the sole judges of the facts were entitled to consider the evidence and all reasonable inferences which could be drawn therefrom. A reasonable inference drawn by a jury from evidence and facts and circumstances before them cannot be said to be against the clear and manifest weight of the evidence. In Michael v. Reading Co., D.C., 82 F.Supp. 54, 55, the court said:

"It does not matter whether I would draw such an inference myself, if it cannot be said that the inference is 'unsupported by probative facts' or is 'so unreasonable as to warrant taking the case from the jury.'"

In Lavender v. Kurn, 327 U.S. 645, at page 653, 66 S.Ct. 740, at page 744, 90 L.Ed. 916, the court said:

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

The defendant states as its fourth reason for the granting of a new trial that "the plaintiff did not sustain its burden of proving that the false answers in the application did not materially affect either the acceptance of the risk by the company or the hazard assumed by the company, and the verdict which was necessarily based on such a finding was not supported by the evidence, and was against the clear and manifest weight of the evidence." In this contention the defendant erroneously assumes the existence of certain facts; that is, (1) that the insured's answers in his application were materially false in the sense that they would absolutely void the policy in question, and (2) that the insured's answers amounted to a material misrepresentation. In the case of Ranger, Inc., v. Equitable Life Assur. Soc. of United States, 6 Cir., 196 F.2d 968, the appellate court for this circuit held that if the insured failed to disclose

in his answers to questions in the application any disease or consultations with physicians involving only slight or temporary indispositions which did not tend seriously to weaken or undermine his general health, such answers were not false, and the fact that he failed to disclose such matters would not bar recovery on the policy there involved. In the case of Wohlfeil v. Bankers Life Co., 296 Mich. 310, 319, 296 N.W. 269, 272, in considering the insured's statements in his application for reinstatement of life insurance that he was in good health and had not been ill within five years, the Supreme Court said: "If it (illness) was not of a serious character defendant was not defrauded and plaintiff's right to recover is not barred." The Supreme Court of Michigan has held that whether or not an answer to a question in an application for an insurance policy amounts to a misrepresentation and materially affects the acceptance of the risk or the hazard assumed by the company, is a question of fact for jury determination. This court is of the opinion that in the present case there was evidence from which the jury might reasonably and properly have concluded that the insured's answers in his application did not, under the law of Michigan, amount to materially false representations and did not materially affect the acceptance of the risk or the hazard assumed by the insurer. The questions as to burden of proof and as to the acceptance of the risk and the hazard assumed by the defendant company were fully and properly covered by the court's instructions to the jury. There was evidence supporting the jury's verdict and, under all the facts and circumstances shown, it cannot be said that the verdict was against the great weight of the evidence.

■ The defendant states as its fifth ground for the granting of its motion for a new trial that "the court erred in refusing to instruct the jury according to the substance of defendant's eighth, eleventh, twelfth, and thirteenth requested instructions." The court has restudied the defendant's requested instruction No. 8 [2] and is still of the opinion that it was not a proper statement of the law applicable to the facts and circumstances in this case. It has been held in Michigan that the jury may consider the evidence and determine whether an insured's answers in his application for insurance were materially false and whether they were made with actual intent to deceive and whether the answers, though false, materially affected the risk or hazard assumed by the insurer. In Turner v. Mutual Benefit Health & Accident Association, 316 Mich. 6, at page 29, 24 N.W.2d 534, at page 544, the court said:

"Counsel on both sides have argued at some length in their briefs on the merits of defendant's claims that the alleged incorrect answers in the application affected the issuance of the policy and also increased the hazard of the insurer. On the record before us, we think that such claims presented questions of fact which plaintiffs were entitled to have determined by the jury. The inclusion thereof in a motion for a directed verdict would not have en-

2. Defendant's requested instruction No. 8: "In determining whether any false statement by Ben Newmark in his application for insurance materially affected the acceptance of the risk by the company, the only evidence in the case is that under usual and normal underwriting principles in the life insurance business, had Ben Newmark stated the truth in his application as to previous consultations with physicians, the application would have

been declined at least pending further investigation and complete information from Newmark's physicians; and if you believe the evidence as to such underwriting principles, you must find that such false statement did materially affect the acceptance of the risk by the company, I instruct you that the insurance policy on his life was void, and your verdict must be for only the amount of the premiums paid and interest to date, to-wit, $914."

titled defendant to judgment as a matter of law."

■■ The court has restudied the defendant's requested instructions Nos. 11 and 12 [3] and at the time of the trial was, and still is, of the opinion that such requested instructions are not proper statements of the Michigan law applicable to the facts and circumstances in this case. Such requested instructions are in conflict with Comp.Laws Mich.1948, § 617.62, relating to privileged communications between physician and patient.

The court has restudied the defendant's requested instruction No. 13 [4] and is of the opinion that such requested instruction was more fully and properly given in substance and effect by the court's instruction reading as follows:

"Furthermore, the court instructs you that you are not to draw any inference unfavorable to the plaintiff from the fact that he, as beneficiary in the policy, did not waive the physician-patient privilege as to the several doctors' testimony relative to their physical examination of Newmark and their conversations with him."

■ The defendant states as its sixth ground for the granting of its motion for a new trial that "the court erred in stating, both in the course of the trial and in the instructions to the jury, that the physician-patient privilege prohibited, as a matter of law, the disclosure of the several physicians' findings, without also stating in substance that such privilege could be waived by the plaintiff." This contention by the defendant is without merit. In its opinion on the plaintiff's motion to limit the scope of certain physicians' depositions to be taken by the defendant, Miller v. Pacific Mut. Ins. Co., D.C., 116 F.Supp. 365, the court concluded that under the well-established law of Michigan the waiver of the physician-patient privilege signed by the insured was void, and the fact that the waiver was also signed by the plaintiff as beneficiary was immaterial.

■ The defendant states as its seventh ground for the granting of its motion for a new trial that "the court erred in holding that the physician-patient privilege had not been waived, and in excluding the proffered testimony as to the information obtained and conclusions reached by the several physicians who examined the insured in 1948 and 1949." This contention is likewise without merit and is fully answered by the court's opinion on the plaintiff's motion to limit the scope of the depositions of certain doctors, supra. In that opinion the court concluded that under the established law of Michigan the waiver of the physician-patient privilege in the present case signed by the insured, Ben H. Newmark, was void.

The court is convinced that its instructions to the jury, when considered as a whole, fully presented the questions of

3. Defendant's requested instruction No. 11: "If you find that the plaintiff had it within his power to prove the nature of Ben Newmark's consultations with physicians during the five years prior to his application, and did not produce or permit such proof, you are entitled to assume that such consultations were for substantial or serious ailments, unless there is actual and preponderating evidence that they were for only minor ailments or routine check-ups."

Defendant's requested instruction No. 12: "If you find that plaintiff has refused any reasonable request of defendant to permit the defendant to inspect any physician's or hospital's records relating to Ben Newmark's death, that would amount to a violation by the plaintiff of the insurance contract and he would be entitled to recover in this action only the amount of premiums he has paid and interest to date, to-wit, $914."

4. Defendant's requested instruction No. 13: "The plaintiff in this case being the beneficiary named in the policy, could under the Michigan law, have waived the physician-patient privilege, had he so elected, but you are to draw no inference unfavorable to the plaintiff from the fact that he chose to exercise his right, as such beneficiary, to claim that privilege."

fact involved and fully and properly informed the jury of the law applicable thereto. The court has reexamined the record of the trial of this case and the jury instructions requested by the parties and the jury instructions given by the court, and is of the opinion that there were no errors in the course of the trial or in the court's instructions which affected the substantial rights of the parties or which resulted in a miscarriage of justice.

Therefore, the defendant's motion for a new trial is denied and an order will be entered accordingly. No costs will be allowed in connection with this motion.