## O'KEEFE v. ZURICH GENERAL ACCIDENT & LIABILITY INS. CO., Limited. *

### No. 8708.

Circuit Court of Appeals, Eighth Circuit.

Sept. 15, 1930.

C. J. Murphy, of Grand Forks, N. D. (W. J. Mayer, H. O'Keefe, Jr., and Murphy & Toner, all of Grand Forks, N. D., on the brief), for appellant.

Ralph F. Potter, of Chicago, Ill., and George A. Bangs, of Grand Forks, N. D., for appellee.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

The appellant, Charles J. O'Keefe, plaintiff in the court below and hereinafter referred to as the plaintiff, at the time spoken of in this opinion, was a dentist practicing his profession in North Dakota. The Zurich General Accident & Liability Insurance Company, Limited, a corporation of the Swiss Confederation, authorized to do business in North Dakota, appellee here, was the defendant in the trial court and will be referred to hereinafter as the defendant.

Among other types of insurance which the defendant wrote in North Dakota was a distinct kind of accident insurance technically called "special professional coverage," particularly designed to insure highly skilled professionals, such as dentists, to whose work the unimpaired use of the hands is essential, against the hazard of dismemberment of the hands and the fingers of the hands. For a policy of insurance of this type plaintiff made application to the defendant August 12, 1927, and a policy was issued to him on August 17th of that year. By the terms of this policy the defendant agreed to pay the plaintiff in the event of accidental dismemberment of the hands or fingers during the life of the policy stipulated amounts, which for the loss of the thumb, index, and second fingers of the right hand totaled $26,500. The plaintiff suffered accidental dismemberment of those parts September 17, 1927, and thereafter brought this suit to recover on the policy.

The answer set up inter alia the defense that in his application the plaintiff made certain false representations, and that by the terms of the policy right of recovery under it was barred "in the event that any one of the statements in the application material either to the acceptance of the risk or to the hazards assumed by the company, is false, or in the event that any one of such statements is false and made with intent to deceive."

In his application, in answer to a question as to whether any life, health, or accident insurance company ever had rejected an application by him or canceled a policy theretofore issued to him, or declined a renewal, the plaintiff answered that in 1920 an application by him was rejected because of stomach trouble, but that on further investigation that rejection was revoked. Also in his application, in answer to a question as to whether he had ever received indemnities for accidental injuries or illness, the appellant answered that in 1920 he had received from the Kansas City Indemnity Company $50 for a hand injury.

The facts were (they were admitted by the plaintiff at the trial) that prior to his application for this policy (all before December 31, 1921) one policy of accident and one of health insurance held by plaintiff had been canceled, five of his applications for insurance had been rejected, and on five occasions he had received indemnities for accidental injuries or illness. The evidence tended to show that all of the rejections and cancellations had been on account of the same stomach condition mentioned by the plaintiff as the reason for the one rejection stated by him in his application, that he had entirely recovered from this condition more than five years before the date of the application, and that the total of the indemnities which he had received was $250, which were on account of two accidents and one illness.

At the close of all the evidence, including the foregoing, a verdict for defendant was directed, the trial court holding: "That the plaintiff made untrue answers to questions in the application that are material to the risk and increased the risk of loss, being the answers with reference to applications for policies of insurance that had been rejected by the companies that he did not disclose to the defendant, and with reference to indemnities collected by the plaintiff from other companies which he did not disclose. That the question was whether or not those untrue answers were material to the risk, that this was a question of law for the court to decide and could not be submitted to the jury."

1. Section 6501 of the North Dakota Code (Comp. Laws 1913) provides in connection with applications for insurance that: "No oral or written misrepresentation made in the negotiation of a contract or policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss."

Assuming that the plaintiff did make misrepresentations in the respects found by the court below, the prime questions in this case are these: First, did the matters misrepresented by the plaintiff increase the risk of loss within the meaning of section 6501, and, second, if they did increase the risk of loss, does that so conclusively appear upon the evidence that reasonable men could reach no other conclusion? It is conceded by the defendant that, if the first of these questions is answered in the negative, then, so far as these misrepresentations are concerned, they did not make void the policy. If the second of these questions is answered in the negative, then there was an issue for the jury, and it was error to direct a verdict. The questions may be considered simultaneously.

Looking first at the language of the North Dakota statute, deferring until later any study of decided cases construing it and similar statutes in other states, it seems to us to mean that no misrepresentation or false statement made in an application for insurance is ipso facto a defense. It is a defense only when it is proved that "the matter misrepresented increased the risk of loss," that is to say, when it is proved that the hazard insured against would be more likely to happen in the real state of the facts than in a state of facts not actually existing, but falsely represented as the real state of facts.

To illustrate, in an application for fire insurance on a given building, A falsely represents that gasoline is not stored in that building. The truth is, the building is filled with gasoline. The hazard insured against is fire. Certainly that hazard is more likely of occurrence in a building stored with gasoline than in a building without gasoline. Clearly then the matter misrepresented "increased the risk of loss." And if such a misrepresentation were proved conclusively, there would be no issue for a jury, since, while in a sense it is a question of fact as to whether the hazard was increased by gasoline, it is a question concerning which reasonable men would not differ, and therefore not a question.

But suppose A has falsely represented, not that there was no gasoline in his building, but that he had not previously had a fire. The truth is that he did have a fire forty years before he applied for this insurance. Does the fact that he had that fire increase the risk that his building now will be destroyed by fire? It is nonsense to suggest it. There could be no physical connection between a fire forty years or one year ago and a fire now.

The only effect upon the risk would be the possibly increased moral hazard, which the earlier fire or fires might be circumstances tending to establish. It would be a question for a jury whether from all the facts, including these circumstances, the risk actually was increased.

The plaintiff here represented that in 1920, seven years before his application, he had received $50 as indemnity for an accident. In truth he had received five payments of accident and health insurance in a total amount of $250, all more than seven years before the application here. The accidents and illnesses involved were trifling. The hazard insured against by the policy here is *dismemberment*. Is it possible that reasonable men could reach no other conclusion than that the hazard of dismemberment is increased by a minor accident and an insignificant illness seven years before? We think that question must be answered in the negative.

The plaintiff represented that an application made by him for insurance was rejected in 1920. He omitted, however, certain rejections and cancellations all occurring more than six years before this application. All of them were because of the same then condition of his health, a condition which had disappeared long before this application. Did the matters thus misrepresented necessarily increase the risk of loss?

Remembering that the hazard insured against is *dismemberment*, can it be said that that hazard necessarily was increased by the rejection at some time in the past of an application, for example, for life insurance? Must we not know at least for what reason the application was rejected? Perhaps the application was rejected because the company insured only members of the Masonic Order and the applicant was not a member. Would that increase the hazard insured against? Must it not be determined in each case from all the facts, including the fact concealed, whether the risk has been increased? Such is our view, and such we think must be the view of any who is not willing to say that mere failure to disclose a rejection for insurance, although it may have happened in years remote, although long since it may have been forgotten, although it may have been for some cause between which and the hazard to be insured against there could be no possible connection, does necessarily increase the risk.

Our view is that the plaintiff's misrepresentation or, more accurately, his failure to disclose rejections and cancellations, when the explanation in evidence of all the facts sur-

rounding them is considered, was not a misrepresentation as to a matter which so undoubtedly increased the risk of accidental dismemberment as that reasonable men might not think otherwise.

But defendant earnestly contends that the language in section 6501 "unless the matter misrepresented increased the risk of loss" means "unless the matter misrepresented" was "material to the risk," and that under section 6484 any misrepresentation of a fact is "material to the risk" if the fact would probably and reasonably have influenced the insurer·in forming his estimate of the disadvantages of a proposed contract or in making his inquiries.

No decision of the Supreme Court of North Dakota supporting this construction has been cited. Cases are cited (e. g. Soules v. B. A. Y., 19 N. D. 23, 120 N. W. 760) which hold that that *increases* the risk which *materially affects the risk* and so much may readily be conceded. But there is no decision in North Dakota holding that what might reasonably influence an insurer's entering into the contract necessarily also increases the risk of loss under the contract.

Section 6484, which defendant in part relies on, reads as follows: "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due in forming his estimate of the disadvantages of the proposed contract or in making his inquiries."

Defendant seeks to apply this section to section 6501 after first construing the words in section 6501—"increase the risk of loss," as meaning "material to the risk"—but such construction of section 6501 robs it of significance and purpose. The obvious intent of the section was to work some change in the pre-existing law. No change was accomplished, if, after its adoption in the same sense as before, whatever affects the acceptance of the risk still defeats the policy.

Upon the oral argument of the case it was contended also by defendant that whatever influenced the acceptance of a risk necessarily increased the risk, for, if the risk is not accepted, then there is no risk, and any risk is an increase over no risk. It seems too clear for discussion, however, that section 6501 assumes an acceptance of the risk by the insurer. A risk never accepted cannot be increased.

We turn now to the decisions relied on by the defendant. But we consider only those construing statutes essentially identical with the North Dakota statute. Minnesota has such a statute. Tennessee has such a statute. It must be conceded that under the facts in various cases decided by the Supreme Courts of these states they have held that what indisputably affects the acceptance of a risk "increases the risk of loss." See Flikeid v. N. Y. Life Ins. Co., 163 Minn. 134, 598, 203 N. W. 600; Hughes Bros. v. Aetna Ins. Co., 148 Tenn. 293, 255 S. W. 363.

While we agree with the result reached in the cases from these states, so far as we have examined them, since in each of them the misrepresentations proved, beyond controversy, did increase the risk of loss, we cannot agree to the broad construction of the phrase "increase the risk of loss" which these courts announce.

As contrasted with these decisions others of equal authority support our construction of the statute. Everson v. Assurance Corporation, 202 Mass. 169, 88 N. E. 658, 660 (Col. 2); Provident, etc., Co. v. Whayne's Adm'r, 131 Ky. 84, 93 S. W. 1049, 1052; Hermany v. Life Ass'n. 151 Pa. 17, 24 A. 1064, 1066.

But if the construction contended for by the defendant is right, if within the meaning of section 6501 that increases the risk of loss which affects the acceptance of the risk, it is still a possible question of fact in any case whether a matter misrepresented does affect the acceptance of the risk. Certainly not every conceivable misrepresentation would so obviously affect the acceptance of the risk as that reasonable men could not differ concerning it. For example, would reasonable men necessarily say that, if the plaintiff had informed the defendant that five years before he had received $250 in indemnities for accident and illness, the defendant would not have accepted him for this policy of dismemberment insurance? We think not. Again, for example, if this plaintiff had informed this defendant that five years before he had been rejected for life insurance because of an illness from which he had recovered, would reasonable men necessarily say the defendant would not have accepted his application for dismemberment insurance? We think not. But such were the matters misrepresented here. We think that there was still an issue which the court should have submitted to the jury, even under the construction of the statute contended for by the defendant. Ivanesovich v. Casualty Co., 145 Minn. 175, 176 N. W. 502, 504 (Col. 2); Mack v. Ins. Co., 167 Minn. 53, 208 N. W. 410,

412 (Col. 2); Fidelity, etc., Ass'n v. Miller (4 C. C. A.) 92 F. 63, 72; Penn Mutual, etc., Ins. Co. v. Bank & Trust Co. (6 C. C. A.) 72 F. 413, 430, 38 L. R. A. 33.

2. There is yet one question in the case. The trial court found that there was not such conclusive proof of misrepresentations by the plaintiff as to diseases from which he had suffered as that a verdict should be directed on that ground. The defendant insists there was. A consideration of the testimony fully supports the conclusion of the trial court in this regard. Penn Mutual, etc., Ins. Co. v. Bank & Trust Co., supra.

The judgment below is reversed, and the case remanded for a new trial.