LIGROW *v.* ABRAHAM LINCOLN LIFE INSURANCE CO.

1. INSURANCE—"GOOD HEALTH" DEFINED.
   "Good health" means that insured is free from disease that would seriously affect general soundness of system, and that he has not been attended by physician for serious ailment.

2. SAME—GOOD HEALTH QUESTION FOR JURY.
   Whether insured was in good health at time health and accident policy was delivered to him, *held,* properly submitted to jury, where evidence showed that, although he was suffering from temporary ailment, it was not serious, and that he fully recovered.

3. SAME—EVIDENCE—PROOFS OF LOSS SUBJECT TO EXPLANATION.
   Proofs of loss should be treated as evidence of fact stated, being in nature of admission; but it is subject to explanation, and cannot have effect of estoppel when made upon information received from attendant physician, and in good faith.

As to meaning of "good health" in insurance policy, see annotation in 40 A. L. R. 662.

Appeal from Montcalm; Hawley (Royal A.), J. Submitted June 21, 1932. (Docket No. 64, Calendar No. 36,307.) Decided December 6, 1932.

Assumpsit by Louis Ligrow against Abraham Lincoln Life Insurance Company, an Illinois corporation, on a sick and accident indemnity policy. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Charles H. Goggin* and *Paul R. Cash,* for plaintiff.

*McAllister & McAllister,* for defendant.

CLARK, C. J. On March 15, 1928, defendant issued to plaintiff and delivered the next day a policy of insurance or indemnity against sickness and accident.

Under the contract, (a) the insurance was not to be in force unless delivery of the policy occurred while the insured was in good health, and (b) the insurance was against loss resulting from illness contracted after 15 days from date of policy.

The defense to a suit on the policy is upon both the above provisions. Plaintiff contends that but one defense is open, but, in our view, the contention may be passed.

On March 12, 1928, plaintiff went to St. Louis, Michigan, and took baths and consulted a physician. He remained there until March 31st. He was up and going about to shows, circuses, etc. The physician testified the ailment was temporary, not serious, and that plaintiff left fully recovered.

He received sick benefit from another company for this illness, if it may be called such, but of such fact the record has nothing more.

Plaintiff worked during the month of April without loss of time and was in good health, as he testified. He became ill on or about May 2, 1928, and thereafter suffered a protracted sickness, for which recovery is here sought under the policy.

The plaintiff contends he was in good health at all times herein mentioned prior to May 2d, and this contention is supported by evidence.

Defendant urges plaintiff was not in good health on March 16th, and that the sickness for which recovery is here sought was contracted before 15 days after date of policy, and that, for these reasons, plaintiff may not recover. Defendant has support in evidence, notably, statements made in proofs of loss, which statements plaintiff, to some extent at least, explained.

The trial judge submitted to the jury the question of whether plaintiff was in good health when the policy was delivered and the question of whether the illness for which recovery is sought was contracted after 15 days from date of policy. In the charge, good health was defined. Defendant caused to be submitted a special question, "Did Louis Ligrow contract this illness for which he seeks to recover in this case in March, 1928?" Apparently, the question was answered in the negative, as the verdict is for plaintiff. From judgment on verdict, defendant has appealed.

The definition of good health, as instructed by the trial judge, is that given in *Blumenthal* v. *Berkshire Life-Insurance Co.*, 134 Mich. 216 (104 Am. St. Rep. 604), which, quoting from syllabus:

"means that he is free from disease that would seriously affect the general soundness of the system, and that he has not been attended by a physician for a serious ailment."

Under this rule, plaintiff's testimony and that of his attending physician, above stated, to the effect that his ailment while at St. Louis was temporary and not serious, gives support to the finding of the jury that plaintiff, despite the ailment, was in good health at the time or times in question.

The verdict therefore is supported by evidence and must be sustained. That it is against the great weight of the evidence is a question not before us.

Proofs of loss were here subject to explanation under the holding in *John Hancock Mutual Life Ins. Co. v. Dick,* 117 Mich. 518 (44 L. R. A. 846):

"We have no doubt that the proofs of loss should be treated as evidence of the fact stated, being in the nature of an admission; but it is subject to explanation, and cannot have the effect of an estoppel, when made upon information received from the attendant physician, and in good faith."

And see *Hubbell v. North American Union,* 230 Mich. 668.

We find no error. Affirmed.

McDONALD, POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.