METROPOLITAN LIFE INSURANCE CO. v. JANKOWSKI.

1. INSURANCE—LIFE—APPLICATION A PART OF CONTRACT.

Original application for ordinary life insurance policy, attached to special class whole life policy, issued at a slightly higher premium because of applicant's excess weight, when accepted and premium therefor paid by insured *held*, a part of the insurance contract in insurer's suit to cancel policy after death of insured because of fraud in obtaining the policy as against beneficiary's contention that no advantage could be taken because of any misstatement therein because policy was not issued on the original application but as a result of an amended application which was not attached to the policy (3 Comp. Laws 1929, §§ 12425, 12427).

2. EVIDENCE—JUDICIAL NOTICE—LIFE INSURANCE—APPLICATIONS—RELIANCE ON STATEMENTS.

It is common knowledge that policies of life insurance are only issued upon written application and that insurance companies rely upon the statements made in such applications.

3. INSURANCE—EFFECTIVE DATE OF LIFE POLICY.

Parties have a right to contract as to the effective date of a life insurance policy.

4. SAME—EFFECTIVE DATE OF POLICY ACCEPTED BY INSURED.

Life insurance policy dated March 20, 1935, which was not accepted by insured until May 22, 1935, became effective March 20, 1935, and such effective date controlled the time for payment of quarterly premiums and lapse of policy for their nonpayment.

5. SAME—REINSTATEMENT—FRAUD IN APPLICATION—EVIDENCE.

Application for reinstatement containing statements that insured was in sound health and had not, since date of issuance of policy had any illness or injury or consulted any physicians *held*, to contain a material misrepresentation relating to the condition of her health sufficient to invalidate reinstatement,

where evidence in suit for cancellation shows she had been treated at city physician's office and admitted to two different hospitals within three weeks of date of application for reinstatement and such application was made on date of discharge from second hospital.

6. SAME—CONTRACTS—FRAUD.

Since insurance is a matter of contract, fraud which is beneficial to a party seeking recovery, cannot be made the basis for enforcement of the contract.

7. SAME—MISREPRESENTATION AFFECTING ASSUMPTION OF RISK.

An insurance policy may be cancelled for an untrue statement made in good faith or in ignorance of its falsity if such misrepresentation materially affects assumption of the risk by the insurer.

Appeal from Wayne; Taylor (Mark D.), J., presiding. Submitted April 19, 1938. (Docket No. 57, Calendar No. 39,952.) Decided June 30, 1938.

Bill by Metropolitan Life Insurance Company, a New York corporation, against Joseph Jankowski to have decreed null and void a life insurance policy. Bill dismissed. Plaintiff appeals. Reversed.

*Bulkley, Ledyard, Dickinson & Wright* (*R. William Rogers,* of counsel), for plaintiff.

*Koscinski, Kaminski, Poleski & Wojcinski,* for defendant.

SHARPE, J. We adopt the following statement of facts as found by the trial judge:

"Plaintiff corporation has filed its bill of complaint in this cause seeking to have decreed null and void a policy of insurance issued to one Mary Jankowski on the grounds of alleged fraud in obtaining said policy of insurance; to have decreed null and void a reinstatement of the said policy and that the defendant be required to deliver the same to plain-

tiff for cancellation; and that Joseph Jankowski, defendant herein, be restrained by permanent injunction from prosecuting any action for the collection of the proceeds of said policy or from assigning, transferring or otherwise disposing of said policy issued by the plaintiff to the said Mary Jankowski.

"It appears that Joseph Jankowski, the defendant herein, is the surviving spouse of Mary Jankowski, deceased, and the beneficiary named in said policy.

"On March 12, 1935, Mary Jankowski signed an application for a policy of ordinary life insurance of the face amount of $1,000 to be issued by the Metropolitan Life Insurance Company. The soliciting agent was William McDowell in whose handwriting the answers contained in part A of the application are filled in. On the following day Dr. V. L. Van Duzen called at the Jankowski home to make a medical examination of the insured for the company. The answers to the questions appearing in part B of the application were filled in in the handwriting of Dr. Van Duzen at the time of the examination, and this part of the application was duly executed by the applicant on March 13, 1935. The application, which is made a part of plaintiff's bill of complaint, contains, among other things, the following statements and representations to the company:

" 'I have never had any of the following complaints or diseases: Apoplexy, appendicitis, asthma, bronchitis, cancer or other tumor, consumption, diabetes, disease of heart, disease of kidneys, disease of liver, disease of lungs, fistula, fits or convulsions, goitre, habitual cough, insanity, colic, jaundice, paralysis, pleurisy, pneumonia, rheumatism, scrofula, syphilis, spinal disease, spitting of blood, varicose veins.

" 'I have not been attended by a physician during the last five years.

" 'I have not had any treatment within the last five years at any dispensary, hospital or sanitarium.

" 'I have not had any surgical operation, serious illness or accident.

" 'The present condition of my health is good.

" 'I have no usual medical attendant.

" 'I have never been sick.'

"And over her signature the applicant further stated:

"'I hereby certify that I have read the answers to the questions in part A hereof and to the questions in part B hereof, before signing, and that they have been correctly written, as given by me and that they are full, true and complete, and that there are no exceptions to any such answers other than as stated herein.'

"Applicant further stated in writing as a part of said application as follows:

"'It is understood and agreed: 1. That the foregoing statements and answers are correct and wholly true, and, together with answers to questions on part B hereof, they shall form the basis of the contract of insurance, if one be issued.

"'2. That no agent, medical examiner or any other person, except the officers of the company, have power on behalf of the company: (a) to make, modify or discharge any contract of insurance, (b) to bind the company by making any promises respecting any benefits under any policy issued hereunder.

"'3. That no statement made to or by, and no knowledge on the part of, any agent, medical examiner or any other person as to any facts pertaining to the applicant shall be considered as having been made to or brought to the knowledge of the company unless stated in either part A or B of this application.

"'4. That the company shall incur no liability under this application until it has been received, approved, and a policy issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the company during the lifetime of the applicant, in which case such policy shall be deemed to have taken effect as of the date of issue as recited on the first page thereof.'

"It appears from part B of the application that the applicant was five feet, one inch in height and 180 pounds in weight. The applicant's weight being in excess of the company's requirements, a policy of ordinary life insurance was not issued. In its place the company submitted a policy in the same amount but classified as special class whole life policy, the only difference being that the policy issued required the payment of slightly higher premiums. The policy issued bears date of March 20, 1935, and on or about that date was tendered to the insured. The insured objected to the increase in premiums and did not agree to accept the policy issued until May 10, 1935, (May 22, 1935?) when she executed a further statement to the company modifying and

confirming the statements made in the original application. The first premium was paid on May 10, 1935, (May 22, 1935?) and on May 22, 1935, the insured amended her original application by changing the plan of insurance to special class whole life and accepted delivery of the policy.

"The policy provided for the payment of quarterly premiums. Being issued March 20, 1935, the second quarterly premium became due June 20, 1935. The insured refused to pay the statement received by her for the second premium due on the policy. She contended that inasmuch as the policy had not been delivered to her until May 22, 1935, premiums should commence as of that date and that the second premium was not due until August 22, 1935. The soliciting agent, McDowell, offered to file an application with the company to re-date the policy as of the date of delivery in order to accomplish the purpose desired by the insured. After the expiration of the 30-days' grace period from June 20, 1935, and the consequent lapsing of the policy, the amount of the second premium, $10.13, was delivered to Mr. McDowell on August 21, 1935, upon the condition that the same might be paid to the company if the policy was re-dated as requested. The application for re-dating the policy was refused and the premium conditionally delivered to Mr. McDowell was returned to the insured by check dated August 28, 1935. All efforts on the part of Agent McDowell to keep the policy in benefit were, of course, abandoned.

"On the morning of September 3, 1935, the beneficiary and defendant in this cause called at the district office of the insurance company and procured from the cashier a form application to the Metropolitan Life Insurance Company for the reinstatement of the insurance policy which, as previously indicated, had lapsed. Later on the same day Agent McDowell made a regular call at the Jankowski

home for the purpose of collecting premiums on other policies and at the request of Mr. Jankowski acted as a witness to the execution of the application for reinstatement by the insured. Said application for reinstatement contains, among other things, the following representations:

" 'My present occupation is that of a press operator. I am employed by the National Stamping Company of Detroit. I am now in sound health. I have not, since the date of issue of Policy No. 0645125 S. C., had any illness or injury or consulted any physicians.'

"In writing, over her signature, the insured stated as follows:

" 'I hereby certify that the foregoing statements and answers are correct and wholly true and have been made by me to induce the Metropolitan Life Insurance Company to reinstate the above policy, and I agree that if said company shall grant such reinstatement the same shall be deemed to be based exclusively upon the representations contained in this request and upon the express condition that if the foregoing statements be in any respect untrue said company shall, for a period of two years from the date of such reinstatement, be under no liability by reason of the attempted reinstatement of the policy, except that the company shall return to the insured or his personal representative all premiums paid since the date of said reinstatement.' * * *

"Defendant stated on cross-examination that his wife was a patient in Receiving Hospital in August, 1932, or within five years from the date of the execution of the original application for the issuance of the insurance in question.

"It further appears that on August 14, 1935, approximately two weeks prior to the execution of the application for reinstatement of the policy, the insured was examined by Dr. Elovzin of the city physician's office * * * and the insured (was) given an order for admission to the Receiving Hospital for treatment. It also appears that the insured was admitted to the Receiving Hospital on August 14, 1935, where she remained as a patient until August 17, 1935. * * *

"On August 31, 1935, two days prior to the execution of the application for reinstatement, the insured was admitted to St. Joseph's Mercy Hospital.

\* \* \* An operation was recommended. Insured entered St. Joseph's Mercy Hospital on August 31, 1935, and remained there, \* \* \* until four o'clock on the afternoon of September 3, 1935. The application for reinstatement was executed by the insured on the 3d of September or the same day that she left the hospital.

"Insured died October 23, 1935, after an operation for cholecystitis and appendicitis, and the cause of death was carcinoma (cancer) of the gall bladder and liver."

It also appears that the insured could neither read, write nor speak the English language. Her two sons acted as interpreters. When the cause came on for trial and after a hearing upon the claims of the respective parties, the trial court dismissed plaintiff's bill of complaint. Plaintiff appeals.

It is the claim of defendant that plaintiff company cannot take advantage of any misstatement of insured in the original application since the special risk policy was not issued on the original application, but as a result of an amended application which was not attached to the policy and cite 3 Comp. Laws 1929, §§ 12425, 12427 (Stat. Ann. §§ 24.261, 24.263), as authority therefor. As we examine the record we find that paragraph six of plaintiff's bill of complaint alleges the following:

"That among the terms and conditions of the policy and being and constituting a part thereof, were the following provisions:

" 'This policy and the application therefor, a copy of which is attached hereto as a part hereof, constitute the entire contract between the parties and all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties and no statement shall avoid this policy or be used in defense of a claim hereunder unless it be contained in the application therefor.

" 'This policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its

date of issue, except for nonpayment of premiums and except as to provisions and conditions granting additional insurance specifically against death by accident, contained in any supplementary contract attached to, and made part of, this policy.'

"That a copy of the written application was securely attached to the before-mentioned policy, to-wit, number 0645125 S. C. when the same was issued."

Paragraph six of the defendant's answer reads as follows:

"6. Answering paragraph 6 of said bill of complaint, this defendant admits the allegations therein contained."

It also appears that on the opening of the trial plaintiff's counsel offered plaintiff's exhibit 1 into evidence upon the following statement:

"Plaintiff's exhibit 1 is the original Metropolitan Life Insurance Company policy of insurance No. 0645125 with a photostatic copy of the insured's application for the issuance of the policy attached thereto, the execution of which policy and delivery thereof with a copy of the application attached thereto was admitted by the defendant in his answer."

The exhibit was received in evidence without objection.

The record as settled, certified and forwarded to this court shows that plaintiff's exhibit 1, which was the policy of insurance, included the instrument which amended the original application by changing the plan of insurance.

In this cause the original application which was attached to the policy was the application upon which the policy was issued. It is common knowledge that policies of life insurance are only issued upon written application and that insurance compa-

nies rely upon the statements made in such applications. In the case at bar the false statements complained of are contained in the application which was attached to the policy and made a part of the contract. The contract which was delivered to the insured contained the following proviso:

"This policy is issued in consideration of the application therefor, a copy of which application is attached hereto and made part hereof. &ast; &ast; &ast;

"This policy and the application therefor, a copy of which is attached hereto as a part hereof, constitute the entire contract between the parties."

The next question presented for review relates to the effect of the false statements contained in the application for reinstatement. It is the claim of defendant that the insurance policy did not lapse and hence there was no necessity for reinstatement of the policy. It appears to be a conceded fact that the policy of insurance was not accepted by the insured until May 22, 1935, but the policy of insurance so accepted provided that it became effective as of the date of issuance, namely, March 20, 1935, and that subsequent premiums would become due the 20th of every June, September, December and March. Parties have a right to contract as to the effective date of a life insurance policy. *Weller* v. *Manufacturer's Life Ins. Co.,* 256 Mich. 532; *Jewett* v. *Northwestern National Life-Ins. Co.,* 149 Mich. 79. In the case at bar the policy became effective March 20, 1935. The failure of defendant to pay the June premium resulted in a lapse of the policy and necessitated an application by the insured for a reinstatement of the policy.

As we view the record, we can come to no other conclusion than that material misrepresentations

relating to the condition of the health of the insured were contained in the application for reinstatement.

In *Henson* v. *John Hancock Mutual Life Ins. Co.*, 261 Mich. 693, the uncontradicted evidence established that the applicant for a policy upon her daughter's life told the agent that the daughter was suffering from a serious ailment. The agent, in fraud of his employer, failed to disclose the information and wrote in the application that the applicant was in good health. A policy was issued. We there said:

"Plaintiff claims that his wife signed a blank application for the insurance and fully informed the soliciting agent of the serious illness of the daughter, and the next day when an investigator for the insurance company called she so informed him and received assurance that the policy would be issued. The policy was issued upon an application containing answers directly contrary to the information claimed to have been given the agent. The court directed a verdict in behalf of defendant and we must, therefore, accord full probative value to the testimony in behalf of the plaintiff.

"A palpable fraud was perpetrated on defendant by its agent. May plaintiff recover on the basis of such fraud? Had the agent stated in the application what plaintiff's wife said about the serious illness of the child no policy would have issued, and, in reason, none should have been expected by plaintiff. Assuming that the agent inserted false answers in order to procure issuance of the policy, can plaintiff, upon a showing that had true answers been inserted reasons against insurance would have been stated, make the fraud of the agent ground for recovery? Insurance is a matter of contract. Fraud, beneficial to a party seeking recovery, cannot be made the basis for enforcement of the contract. This is not a case in which true answers

authorized insurance and false answers were inserted by the insurance agent, but a case in which true answers did not authorize insurance, and false answers were inserted by the insurance agent. * * *

"Plaintiff's proofs put him out of court. The judgment is affirmed, with costs to defendant."

See, also, *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519 (6 Sup. Ct. 837), cited in the above case.

In *Prudential Ins. Co. of America* v. *Ashe,* 266 Mich. 667, we said:

"An insurance policy may be cancelled for an untrue statement made in good faith or even in ignorance of its falsity, if such misrepresentation materially affected assumption of risk by the insurer."

Defendant's insured's condition of health at the time the application for reinstatement was made was a material fact affecting the risk of plaintiff company. There is no doubt that if the insurance company knew the true condition of the insured's health at the time the application for reinstatement was made, the company would not have reinstated the policy.

The decree below will be reversed and the cause remanded for the entry of a decree cancelling the reinstatement of the policy. Plaintiff will recover costs.

WIEST, C. J., and BUTZEL, BUSHNELL, POTTER, CHANDLER, NORTH, and MCALLISTER, JJ., concurred.