## NORTHWESTERN NAT. LIFE INS. CO. v. NALBANT et al.

### No. 8624.

Circuit Court of Appeals, Sixth Circuit.

May 15, 1941.

Harvey A. Fischer, of Detroit, Mich. (Oxtoby, Robison & Hull, Harvey A. Fischer, and Lawrence E. Brown, all of Detroit, Mich., on the brief), for appellant.

Ernest P. Lajoie, of Detroit, Mich., for appellees.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

Appellees, as beneficiaries of a life insurance policy issued by appellant on the life of their brother, Dr. John P. Nalbant, recovered judgment in the District Court on the verdict of a jury for the face amount of the policy with interest from the date of the death of the assured.

The basis of the appeal is that the assured made false representations materially affecting the acceptance of the risk and the hazards assumed by the insurer, and that, therefore, the trial judge should have directed a verdict in favor of appellant. It is charged that the assured, in his application, falsely represented that he was in good health and free from every disease; that he had never occupied the same house or room with a tuberculous person; that there had never been any cases of tuberculosis in his family; that he had not consulted a physician in the last ten years, except for an appendectomy in 1933; and that he did not have and had never had asthma.

The assured, a practicing physician in Plymouth, Michigan, made written application on October 26, 1937, to appellant for an insurance policy, which was issued on November 15, 1937.

Dr. Nalbant had not sought the policy. Indeed, he had at first declined to apply for the insurance. A supervisor and an agent, jointly soliciting, had finally prevailed upon him to take the policy. They had stressed the point that, because he was one of its medical examiners, Dr. Nalbant should have insurance in the Northwestern National.

The insured physician became a patient of Dr. Sturgis at the University of Michigan Hospital in Ann Arbor on January 25, 1938, entered the University Hospital January 28th, and left on February 4, 1938. His case history, given the hospital physicians, revealed that for about one year Dr. Nalbant had suffered from dull epigastric pains, sufficient to awaken him at night. The pain was "slightly relieved by soda, also relieved by heat." Dr. Sturgis noted that the patient's pain "has had a tendency to come on before meals, but also when he sits down to eat" and "at the first sip of liquid his pain becomes intensified." Food offered no relief, nor did alkalies, but the latter relieved the sensation of sour stomach.

Further describing the case history given by his patient, Dr. Sturgis recorded: "He has tried all types of diet, eliminating meats, carbohydrates, etc., but without improvement. * * * His symptoms have tended to be present for several weeks and then disappear for a number of weeks, followed by a recurrence. His appetite has been good but he has been afraid to eat as he attributes his distress to his food. He has gained five or six pounds in weight during the past few months, which he thinks has been due to his taking codliver oil and various tonics. Sometimes when he has had a 'sour' feeling in his stomach, he has induced vomiting, with relief. During the past two months he has had an area of tenderness in the right lower quadrant, but no pain. * * * There has been some abdominal bloating but he has not been troubled with eructation of much gas. He has no other complaints except that he has felt tired out for the past few months and feels the need of more sleep— he averages eight or nine hours sleep each night." The insured's trouble was diagnosed as "peptic ulcer" and the treatment prescribed consisted of a sippy diet, as much rest at home as possible for two additional weeks, and certain therapeutic measures.

On February 26, 1938, the insured doctor, himself, in claiming sick benefits under a policy in another company, described the nature of his illness as "peptic ulcer" and stated that he first noticed that he was "beginning to get sick" about a year previously.

The peptic ulcer diagnosis proved to be incorrect, for it is conceded that Dr. Nalbant died on October 3, 1938, of cancer of the secum, or junction of the small and large bowels. Dr. Schneck, an expert witness, described a cancer of the secum as a "very imitating" disease. "It can imitate almost any condition in the intestinal tract," he asserted. "It is one of the hardest conditions there is to diagnose in the intestinal tract until it has reached advanced stages so that it can very well simulate a peptic ulcer."

Dr. Sturgis, who made the wrong diagnosis, testified that, although he could not be sure, he considered it probable, in the light of developments, that Dr. Nalbant had cancer of the secum when the insured first consulted the witness.

Dr. Kerlikowske, assistant director of the University of Michigan Hospital, testified that the hospital records copied from the certificate of death furnished the Registrar of Vital Statistics for the Michigan State Department of Health stated that the cancer which caused the death of the assured had its inception from four to six months prior to the final admission of the assured to the University Hospital on September 14, 1938.

Dr. Bourg of the University of Michigan Hospital staff, who also examined Dr. Nalbant on January 28, 1938, recorded that the patient's health had been good prior to his present illness. The record establishes the fact that, with normal interruptions, Dr. Nalbant practiced his profession steadily until September, 1938.

On these material facts, appellant insists that the jury should not have been permitted to decide the issue of whether Dr. Nalbant obtained the policy in suit by materially false representations affecting the insurance hazard. It is urged that on all the evidence in the case, Dr. Nalbant was not, as a matter of law, entitled to recovery. The appellee replies that the issue involved was a question of fact for the jury, which has been determined with finality against the contention of appellant.

■ Michigan law governs. The following provision is found in the general insurance law of Michigan: "The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it ma-

terially affected either the acceptance of the risk or the hazard assumed by the insurer." Michigan Statutes Annotated, Vol. 17, Sec. 24.280; C. L. '29, Sec. 12444.

In Krajewski v. Western & Southern Life Ins. Co., 241 Mich. 396, 402, 403, 217 N.W. 62, 64, the Supreme Court of Michigan said: "It will be noted that this statute permits voidance of a policy, in case of a false statement, for any one of three reasons: (1) If made with actual intent to deceive; (2) if it materially affected the acceptance of the risk; (3) if it materially affected the hazard assumed by the insurer." The Court said, further, that this statute "condones no fraud perpetrated by an applicant in obtaining insurance and whitens no lies inducing acceptance of the risk." It is important to observe that the Court recognized that whether a representation made in an application for life insurance was false is a question for the jury, although the materiality of the representation is for the court.

In construing this same statute in North American Life Assur. Company v. Jones, 287 Mich. 298, 283 N.W. 587, 589, the Court said that "Misstatements made in good faith which materially affect acceptance of the risk constitute sufficient grounds for cancellation of the policy." This authority was cited by this court in Mutual Benefit Health & Accident Association v. Snyder, 6 Cir., 109 F.2d 469. See, also, National Life & Accident Insurance Co., Inc., v. Nagel, 260 Mich. 635, 245 N.W. 540; Prudential Insurance Co. of America v. Ashe, 266 Mich. 667, 254 N.W. 243; Metropolitan Life Insurance Co. v. Jankowski, 285 Mich. 291, 280 N.W. 766. But it has been held that, under the Michigan statute, the burden rests upon the insurer to prove not only the falsity of the statement, but an intent to deceive or some other specified material result injurious to the insurer. Business Men's Assur. Co. v. Marriner, 223 Mich. 1, 193 N.W. 907.

Appellant stresses the decision of this court in the Snyder case, supra. But the situation revealed there differs materially from that found here. It was observed in the former opinion that "there is not a fact or circumstance in the case which tends to raise a doubt as to the truth" of the testimony of the insured's family physician that the insured was suffering from a fatal disease around the time of

728

the issuance of the policy, less than two months before his death. There was, therefore, no jury issue in the Snyder case and a verdict for the insurance company was properly directed.

Three other decisions emphasized by appellant have no bearing here. In Subar v. New York Life Ins. Company, 6 Cir., 60 F.2d 239, 240, it was made clear that "the point to be decided is accordingly not one of fraud or misrepresentation, but of contract law where the parties agreed that the insurance should not take effect upon the delivery of the policy and the payment of the premium if the insured consulted a physician after his medical examination." Henson v. John Hancock Mutual Life Insurance Company, 261 Mich. 693, 247 N. W. 102, was a case where "a palpable fraud was perpetrated on defendant by its agent." The Supreme Court of Michigan declared: "This is not a case in which true answers authorized insurance and false answers were inserted by the insurance agent, but a case in which true answers did not authorize insurance and false answers were inserted by the insurance agent." Bonewell v. North American Accident Insurance Company, 160 Mich. 137, 125 N.W. '59, is also clearly differentiable from the instant case, for in that litigation a practical conspiracy between the insured and an agent of the insurer, to perpetrate a fraud upon the insurance company, was the ground upon which a policy of insurance was vitiated.

Other Michigan cases cited by appellant do not control the decision here, for the reason that in each there is important factual differentiation from the case at bar. The applicant for life insurance in Mutual Life Insurance Co. of New York v. Geleynse, 241 Mich. 659, 217 N.W. 790, 56 A.L.R. 702, within two months before making application, had been treated some fifteen times for vomiting spells. He died about a year later of cancer of the stomach. His concealment of the fact that he had consulted and been treated by physicians was held not to have been an omission in good faith.

Prudential Insurance Co. of America v. Ashe, supra, relied upon by appellant, cited Hardman v. Firemen's Ins. Co., C.C., 20 F. 594, in which a judgment for a plaintiff was upheld on the ground that the question of fact involved had been properly left to the jury. "Good health" was defined in the Ashe case as it was in

Ligrow v. Abraham Lincoln Life Insurance Company, 260 Mich. 444, 245 N.W. 498, also cited by appellant, as meaning that the insured is free from disease which would seriously affect the general soundness of his system, and that he had not been attended by a physician for a serious ailment. In the Ligrow case, a jury verdict was upheld as supported by the evidence of the plaintiff and his attending physician. The court stated that the fact that the verdict was against the weight of the evidence did not present a question for consideration by the appellate tribunal.

In another Michigan case, depended upon by appellant, Blumenthal v. Berkshire Life Ins. Co., 134 Mich. 216, 96 N.W. 17, 18, 104 Am.St.Rep. 604, a judgment for the plaintiff was affirmed, it being held that a representation in an application for a life insurance policy that one is in good health means that "he has not suffered an illness of a serious nature, tending to undermine the constitution, and that a state of health is freedom from disease or ailment that affects the general soundness or healthiness of the system seriously."

It is noteworthy that, in Brown v. Metropolitan Life Insurance Co., 65 Mich. 306, 32 N.W. 610, 8 Am.St.Rep. 894, another citation of the appellant, it was declared that a mere temporary ailment or indisposition which does not tend to weaken or undermine the constitution at the time of taking membership does not render a policy or certificate of insurance void on the ground of false statement in the application that the insured was in sound health. See, also, Pudritzky v. Supreme Lodge Knights of Honor, 76 Mich. 428, 43 N.W. 373; Hann v. National Union, 97 Mich. 513, 56 N.W. 834, 37 Am.St.Rep. 365.

The rule in Michigan is that questions and answers in an application for life insurance should be construed liberally in favor of the insured. McKinney v. Liberty Life Insurance Co. of Illinois, 263 Mich. 490, 248 N.W. 881.

Our case study convinces us that the District Judge, in submitting this case to the jury, consistently followed Michigan law.

To begin with, Tobin v. Modern Woodmen of America, 126 Mich. 161, 85 N.W. 472, 473, strongly supports this hypothesis. In that case, it appears that the insured made answers to questions in his appli-

cation for insurance in a fraternal society as follows:

"Q. Are you now of sound body and mind, in good health, and free from disease or injury? A. Yes.

"Q. Have you ever had any serious illness, local disease, or personal injury? A. No."

After he signed the application, he was, when initiated into the insurance society, so sick that he had to be helped up stairs; and died of cancer 10 days after receiving his policy. On appeal from a judgment for the decedent on the verdict of a jury, the Supreme Court of Michigan said: "We are satisfied that this applicant was not in good health when he received his certificate; but the question was submitted to the jury, and the verdict is conclusive."

Plumb v. Penn Mutual Life Insurance Co., 108 Mich. 94, 65 N.W. 611, also affirmed a judgment for the plaintiff, the court holding that whether the insured was in good health at the time of the delivery to her of a policy of insurance was a question properly left to the jury. See, also, discussion in Perry v. John Hancock Mutual Life Ins. Co., 143 Mich. 290, 106 N.W. 860.

A late case, Rickert v. Travelers Ins. Co. of Hartford, Conn., 282 Mich. 538, 276 N.W. 546, holds that whether the failure of the insured to inform the insurance company of his visit to a doctor on a certain date was tantamount to concealment of a material fact amounting to a false representation, was a question of fact for the jury; and that the trial court erred in directing a verdict for the insurer.

A very recent decision of the Supreme Court of Michigan likewise demonstrates our duty to affirm the judgment in the instant case. Wohlfeil v. Bankers Life Co. 296 Mich. 310, 296 N.W. 269, decided February 7, 1941, upholds a judgment for the plaintiff on the verdict of a jury upon the ground that in an action brought by the beneficiary the question whether, in his application for reinstatement of a life insurance policy, the insured's statements that he was in good health and that he had not been ill or injured within five years were false statements was a question of fact for the jury.

While we are controlled by the Michigan decisions, it may not be amiss to observe that, as far back as 1896, Chief Justice Taft, when a member of this court, wrote an erudite opinion collating authorities on the general law of misrepresentations in applications for insurance policies. Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 6 Cir., 72 F. 413, op. 432, 38 L.R.A. 33. The noted jurist said: "The court was clearly right in refusing to direct a verdict for the defendant on the ground that the uncontradicted evidence showed that Schardt [the insured] had had syphilis, when he had denied it in his answers. The evidence left it a controverted issue of fact whether Schardt had suffered from this disease, and the questions of his having had it, and of its materiality, were both for the jury." The comment was made that "it is well settled that mere temporary ailments or affections, not of a serious or dangerous character, which pass away, and are likely to be forgotten, because they leave no trace in the constitution, are not to be regarded as diseases, within the meaning of a life insurance policy."

In O'Keefe v. Zurich General Accident & Liability Ins. Co., Ltd., 43 F.2d 809, 73 A.L.R. 298, a statute of North Dakota substantially identical with the Michigan statute under consideration was before the Court of Appeals for the Eighth Circuit. A directed verdict for the defendant insurance company was reversed and the cause remanded on the principle that whether an assured's misrepresentations with respect to indemnity payments under accident and health policies and his failure to disclose rejections and cancellations of policies increased the hazard, defeating recovery under a dismemberment policy, was an issue of fact for the jury.

We find substantial evidence to support the verdict of the jury. The argument of appellant that the insured falsely represented that he was in good health and free from every disease must, therefore, be rejected.

The other assignments of error seem specious. There is substantial evidence that, at the time Dr. Nalbant signed the application for insurance, his wife was not suffering from tuberculosis. She had previously been a victim of the disease and, some six months after the policy involved was delivered, she again became afflicted. There is also justification in the record for the conclusion of the jury, which we assume from their verdict, that at the time Dr. Nalbant married her, Mrs. Nalbant was not suffering from tubercu-

losis; and he could, therefore, in good faith, answer that there had never been a case of tuberculosis in "his family." Such interpretation is impelled by the Michigan rule that answers in insurance applications must be construed liberally in favor of the insured. See McKinney v. Liberty Life Ins. Co. of Illinois, supra.

The other alleged misrepresentations charged to Dr. Nalbant are not even seriously argued. The seemingly inadvertent error in the date of his appendectomy as given by him is deemed immaterial. The evidence that he ever had asthma was nebulous. To the contrary of an apothecary's statement, Dr. Willis, an intimate neighbor with whom Dr. Nalbant frequently played bridge, testified that Dr. Nalbant exhibited no signs of asthma and never complained that he had the easily discerned disease.

The judgment on the verdict of the jury in the District Court is affirmed.