**CONTINENTAL ASSURANCE COM-
PANY, Plaintiff,**

v.

**Susan SHAFFER, Defendant.**

**Civ. A. No. 2754.**

United States District Court
W. D. Michigan, S. D.

Nov. 27, 1957.

J. T. Hammond, Benton Harbor, Mich., for plaintiff.

Butzbaugh, Page & Byrns, Elden W. Butzbaugh and Lester E. Page, Benton Harbor, Mich., for defendant.

STARR, Chief Judge.

In January, 1955, the defendant's husband, Dr. Carvel Ott Shaffer, an osteo-

pathic physician and surgeon, made application to the plaintiff company for a 10-year-term life insurance policy, Part I of his application being dated January 7, 1955, and Part II being dated January 5th. Dr. Shaffer gave his check dated January 6, 1955, and marked "Ins. Prem." to the plaintiff's agent Robert Carney for $402.15, which was the amount of the premium demanded by the agent, and the check was endorsed and cashed by the agent. The agent gave Dr. Shaffer a receipt dated January 5, 1955, for the amount of his check.

In pursuance of his application the plaintiff company issued to Dr. Shaffer its life insurance policy No. 455605 dated March 14, 1955, in the principal amount of $15,000, in which policy defendant Susan Shaffer was designated as beneficiary. Dr. Shaffer died May 22, 1955, and on June 25, 1955, the beneficiary, defendant Susan Shaffer, filed a claim with the plaintiff company for the principal amount of the policy and interest from the date of Dr. Shaffer's death.

On July 30, 1955, plaintiff company filed complaint against defendant Susan Shaffer, which it later amended, alleging that certain of the representations made by Dr. Shaffer in his application for the policy in question were false and were made with intent to deceive, and that such false representations materially affected the acceptance of the risk and the hazard assumed. The plaintiff further alleged that about May 10, 1955, it had given Dr. Shaffer notice by registered mail that it rescinded the policy of insurance issued to him and that with such notice it tendered a refund of $288.-15, which it claimed represented a refund of all premiums paid. It alleged that such tender was refused and returned by Dr. Shaffer. Plaintiff asked for a judgment rescinding the policy and for a determination that it was void when issued. Defendant Susan Shaffer answered, denying that the statements and representations made by her husband, Dr. Shaffer, in his application were false and made with intent to deceive. She alleged that the plaintiff issued the

policy in reliance upon the physical examination of the insured made by its own medical examiner, Dr. Spawr, on January 5, 1955. In her answer she denied plaintiff's right to rescind the policy. Defendant also filed a cross complaint in which she alleged that it was intended that the insurance policy should become effective as of January 5, 1955, and that it was the duty of the plaintiff to issue the policy effective as of that date. In her cross complaint she asked that the policy be reformed to show an effective date of January 5, 1955, that plaintiff's complaint be dismissed, and that she recover judgment for $15,000, the principal amount of the policy, together with interest. The case was tried to the court without a jury, and counsel for both parties have filed comprehensive briefs in support of their respective contentions.

Dr. Shaffer was an osteopathic physician and surgeon engaged in active practice in the city of Benton Harbor, Michigan, and in his practice he maintained a private office and also operated a small osteopathic hospital in or near the city. In August, 1954, Dr. Shaffer, believing that he had a fish bone lodged in his esophagus, consulted and was given a fluoroscopic examination involving the use of an X-ray machine by Dr. Lawrence F. Fisher. During his consultation and examination by Dr. Fisher barium was passed through the esophagus, and this apparently dislodged the obstruction and no further treatment was necessary. On December 6, 1954, which was about 30 days prior to his application for the policy in question, Dr. Shaffer, complaining of a shortness of breath, "bubbling" in his chest, nervousness, and anxiety, consulted with and was treated by Dr. J. Griswold Ruth. Examination by Dr. Ruth at that time included a fluoroscopic study, and also the making of an electro-cardiogram, which revealed an irregular rhythm in Dr. Shaffer's heart action consisting of 15 to 20 extra systoles per minute. As treatment to relieve and correct his heart disturbance and nervous condition, Dr.

Ruth prescribed the drugs quinidine and medarol, which Dr. Shaffer took for a short time thereafter. It is admitted that about February 19, 1955, Dr. Shaffer consulted and was examined by Dr. Richard A. Rasmussen, who diagnosed his condition as bronchogenic carcinoma or lung cancer. Thereafter Dr. Shaffer underwent deep-therapy X-ray treatments followed by so-called cobalt-bomb radiation treatments for the cancerous condition of his lungs. He died May 22, 1955, and his death certificate stated that the cause of his death was "bronchogenic carcinoma, left mainstem bronchus, with generalized carcinomatoses."

In Part I of Dr. Shaffer's application for the policy in question appears the following question and answer:

"8. Are you now to the best of your knowledge and belief in good health and free from deformity or defect? (Answer) Yes."

In Part II of his application appear the following questions and answers:

"1. Have you ever had or been told you had— * * *

"I. An electrocardiogram, x-ray, blood study or other special diagnostic test? (Answer) No. * * *

"3. Have you ever had observation or treatment in any hospital or institution? (Answer) Yes. Mercy hospital, 1948 (?); Dr. J. G. Ruth, Benton Harbor, Michigan; three days; 'unexplainable fever.'

"4. Any other physicians or practitioners consulted in the past 5 years? Why? (Answer) No."

The Michigan statute applicable to the questions presented in this case, being Comp.Laws Mich. 1948, § 522.17 [1] provides:

"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to de-ceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

Therefore, under the above statute the questions presented in this case are: (1) Were the above-quoted statements by Dr. Shaffer in his application for the policy in question false? (2) If false, were such statements made with actual intent to deceive? Or (3) if false but not made with intent to deceive, did such statements materially affect either the acceptance of the insurance risk or the hazard assumed by the plaintiff company?

Although it does not appear that Dr. Shaffer himself actually wrote in the answers to the questions in Parts I and II of his application, it nevertheless appears that he signed both parts and, as there is no proof to the contrary, it may be assumed that his answers were given in response to questioning by the plaintiff's soliciting agent and its physician. Furthermore, as Dr. Shaffer was an active-practicing physician and surgeon, it may be assumed that he understood the nature, import, and materiality of the questions he answered regarding his health.

The law of Michigan is well established that questions and answers in an application for insurance shall be liberally construed in favor of the insured. Pacific Mutual Life Insurance Company v. Miller, 6 Cir., 228 F.2d 889; Northwestern National Life Insurance Co. v. Nalbant, 6 Cir., 119 F.2d 725; Aetna Life Insurance Company of Hartford, Conn., v. Harper, 293 Mich. 385, 292 N.W. 340; McKinney v. Liberty Life Insurance Co. of Illinois, 263 Mich. 490, 493, 248 N.W. 881. In Rickert v. Travelers Ins. Co. of Hartford, Conn., 282 Mich. 538, 543, 276 N.W. 546, 548, the court said:

"Under our holdings * * * it is not the duty of an insured in applying for insurance to advise the

1. Subsequently repealed by Act No. 218, Pub.Acts 1956, § 500.8300, effective January 1, 1957.

company in answer to a question concerning his consultation with physicians of every time he had consulted a physician for a temporary indisposition, but only of the times of consultations relative to a serious ailment."

However, the law of Michigan is also well established that a material misrepresentation in an application for a life-insurance policy will invalidate the policy. In Ranger, Inc., v. Equitable Life Assur. Soc. of United States, 6 Cir., 196 F.2d 968, 974, in considering alleged false statements in an application for life insurance, the court said:

"Under the law of Michigan, a material misrepresentation in an application for insurance will invalidate the policy, though the untrue statement is made in good faith and even in ignorance of its falsity."

See also New York Life Ins. Co. v. Dizik, D.C., 43 F.Supp. 874, affirmed 6 Cir., 126 F.2d 834; North American Life Assurance Co. v. Jones, 287 Mich. 298, 283 N.W. 587; General American Life Ins. Co. v. Wojciechowski, 314 Mich. 275, 22 N.W.2d 371; Prudential Ins. Co. v. Ashe, 266 Mich. 667, 672, 254 N.W. 243; National Life & Accident Insurance Co. v. Nagel, 260 Mich. 635, 245 N.W. 540; New York Life Insurance Co. v. Bahadurian, 252 Mich. 491, 233 N.W. 390; Bellestri-Fontana v. New York Life Insurance Co., 234 Mich. 424, 208 N.W. 427.

In New York Life Insurance Co. v. Newman, 311 Mich. 368, 374, 18 N.W. 2d 859, 861, the court said:

"But, where there is testimony that the illness, not disclosed by the application and for which medical aid was sought, was serious, the question of the seriousness becomes one of fact."

See Miller v. Pacific Mutual Life Insurance Company, D.C., 17 F.R.D. 121, affirmed 6 Cir., 228 F.2d 889; Wohlfeil v. Bankers Life Co., 296 Mich. 310, 296 N.W. 269; Rhode v. Metropolitan Life-Insurance Co., 132 Mich. 503, 93 N.W.

1076; Plumb v. Penn Mutual Life Insurance Co., 108 Mich. 94, 65 N.W. 611.

In his answer to question 8 in Part I of his application for the policy Dr. Shaffer stated in effect that to the best of his knowledge and belief he was in good health and free from deformity or defect. Dr. Ruth, who examined Dr. Shaffer on December 6, 1954, testified in part:

"His complaint was shortness of breath, 'bubbling in the chest, nervousness, anxiety.' * * *

"I fluoroscoped him, and found that his heart was not enlarged, it was normal in size and in shape. An electrocardiogram recorded frequent extra systoles on ventriculation; * * * otherwise, the cardiogram was entirely normal. * * *

"I told him in my opinion he had no evidence of any organic heart disease. I thought that he was working too hard, that he should cut down on the caffeine and the nicotine. Now, extra systoles are caused by many things, and caffeine is one, nicotine is another, fatigue, anxiety, gas, infection, all may cause extra systoles.

"Extra systoles may also be seen with organic heart disease, but pretty usually they are not, and I did not find any evidence of any organic heart disease."

A few days later Dr. Shaffer called Dr. Ruth and told him that he was feeling better. Considering the testimony of Dr. Ruth and the fact that Dr. Shaffer, at and prior to the time he signed the application for the policy, had continued his medical practice and his usual physical activities, the court concludes that his answer, that to the best of his knowledge and belief he was in good health, was not a false statement. Ranger, Inc., v. Equitable Life Assur. Soc. of United States, 6 Cir., 196 F.2d 968; Northwestern National Life Ins. Co. v. Nalbant, 6 Cir., 119 F.2d 725; Wohlfeil v. Bankers Life Co., 296 Mich. 310, 296 N.W. 269; Ligrow v. Abraham Lincoln Life Ins. Co., 260 Mich.

444, 245 N.W. 498; Perry v. John Hancock Mutual Life Ins. Co., 143 Mich. 290, 106 N.W. 860; Tobin v. Modern Woodmen of America, 126 Mich. 161, 85 N.W. 472.

However, Dr. Shaffer's answers to the questions in Part II of his application for the policy present a serious problem. His answer to question 1–I that he had not had an electrocardiogram, X-ray or other special diagnostic test was obviously and admittedly false. On December 6, 1954, about 30 days prior to the time he signed his application he had consulted Dr. Ruth, and in his examination Dr. Ruth had made an electrocardiogram and had also made a fluoroscopic examination of Dr. Shaffer involving the use of an X-ray machine. As hereinbefore stated, the electrocardiogram disclosed an irregular rhythm in Dr. Shaffer's heart action consisting of 15 to 20 extra systoles per minute, and Dr. Ruth had prescribed certain drugs to relieve his heart condition and emotional disturbance. Dr. Shaffer's answer to question 4 in Part II of his application that he had not consulted any other physicians in the past five years was also obviously false, as in August, 1954, he had consulted with Dr. Fisher. Furthermore, in his answer to question 3 in Part II he stated in effect that Dr. Ruth had treated him in 1948, but in his answer to question 4 he failed to disclose the fact that Dr. Ruth had again examined him and made an electrocardiogram and fluoroscopic study on December 6, 1954.

The testimony in this case clearly establishes that if Dr. Shaffer had truthfully answered the questions in Part II of his application and had disclosed the electrocardiogram of his heart action and fluoroscopic examination made December 6, 1954, the plaintiff company would not have issued the policy in question, or at least would not have issued it without further study and examination of his physical condition. Dr. Shaffer's false answers may not have been made with actual intent to deceive, but the evidence establishes that they materially affected the acceptance of the insurance risk and the hazard assumed by the plaintiff insurer. Dr. Shaffer, as a practicing osteopathic physician and surgeon, knew the materiality of the questions in his application regarding the making of an electrocardiogram and a fluoroscopic examination, and he should have disclosed those facts in his answers. In Northwestern Nat. Life Ins. Co. v. Nalbant, 6 Cir., 119 F.2d 725, 727, the court said:

"In Krajewski v. Western & Southern Life Ins. Co., 241 Mich. 396, 402, 403, 217 N.W. 62, 64, the Supreme Court of Michigan said: 'It will be noted that this statute permits voidance of a policy, in case of a false statement, for any one of three reasons: (1) If made with actual intent to deceive; (2) if it materially affected the acceptance of the risk; (3) if it materially affected the hazard assumed by the insurer.' The Court said, further, that this statute 'condones no fraud perpetrated by an applicant in obtaining insurance and whitens no lies inducing acceptance of the risk.' It is important to observe that the Court recognized that whether a representation made in an application for life insurance was false is a question for the jury, although the materiality of the representation is for the court.

"In construing this same statute in North American Life Assur. Company v. Jones, 287 Mich. 298, 283 N.W. 587, 589, the Court said that 'Misstatements made in good faith which materially affect acceptance of the risk constitute sufficient grounds for cancellation of the policy.' This authority was cited by this court in Mutual Benefit Health & Accident Association v. Snyder, 6 Cir., 109 F.2d 469. See, also, National Life & Accident Insurance Co., Inc., v. Nagel, 260 Mich. 635, 245 N.W. 540; Prudential Insurance Co. of America v. Ashe, 266 Mich. 667, 254 N.W. 243;

Metropolitan Life Insurance Co. v. Jankowski, 285 Mich. 291, 280 N.W. 766."

▮▮ It appears that the plaintiff's own physician, Dr. Spawr, examined Dr. Shaffer on January 5, 1955, and found no defect in his health or physical condition and recommended his acceptance for life insurance. However, the fact that the plaintiff may have, to some extent, relied upon the examination of Dr. Shaffer by its own physician and upon its own investigation by reporting agencies, did not relieve Dr. Shaffer of his obligation to answer correctly and truthfully the questions in his application. The fact that Dr. Shaffer's death did not result from the heart condition disclosed by the electrocardiogram on December 6, 1954, does not bar the plaintiff from raising the question as to the falsity of his answers in his application for the policy in question. As Dr. Shaffer's answers in his application hereinbefore discussed were false and materially affected the acceptance of the insurance risk and the hazard assumed by the plaintiff, the policy should be held void from its inception and date of issuance.

In view of the court's conclusion that the insurance policy in question was void when issued, it is unnecessary to consider the defendant's contention that the policy, issued as of March 14, 1955, should be reformed to show an effective date of January 5, 1955. Likewise, in view of the court's conclusion that the policy was void from its inception, it is unnecessary to consider the plaintiff's contention that Dr. Shaffer was guilty of fraud in not reporting any changes in the condition of his health between the date of his application and the date of the issuance of the policy.

▮▮ It appears that plaintiff's agent Robert Carney, who sold the policy in question to Dr. Shaffer, informed him at the time he made the application that the premium was $402.15 and that Dr. Shaffer gave him a check for that amount, which the agent endorsed and cashed. It further appears that the correct amount of the premium for the policy was only $288.15 and that the agent collected $114 in excess of the correct amount. It clearly appears that the agent was authorized by the plaintiff to sell life insurance policies and collect premiums, and it follows that the agent was acting within the scope of his authority when he collected the $402.15 from Dr. Shaffer. It is fundamental that for an insurer to effect a rescission and obtain a cancellation of an insurance contract, it must restore the insured to his former status by refunding all premiums paid. The plaintiff company should accordingly refund and repay the sum of $402.15 collected by its agent as the premium for the policy. In view of the court's conclusion that the insurance policy in question was void when issued, other questions and contentions by the parties do not require consideration.

### Findings of Fact

1. Dr. Shaffer's answer to question 8 in Part I of his application for the policy in question, that to the best of his knowledge and belief he was in good health and free from deformity or defect, was not a false statement.

2. Dr. Shaffer's answers to question 1–I and question 4 in Part II of his application for the policy were false.

3. The false answers made by Dr. Shaffer to the above-mentioned questions in Part II of his application materially affected the acceptance of the insurance risk and the hazard assumed by the plaintiff company in issuing the life insurance policy.

4. The authorized agent of the plaintiff company collected an insurance premium of $402.15 from Dr. Shaffer, which was $114 in excess of the correct amount of the premium.

### Conclusions of Law

1. As the false statements made by Dr. Shaffer in his application to the plaintiff company for life insurance materially affected the acceptance of the insurance risk and the hazard assumed by the company in the issuance of the

policy in question, the policy was void from its inception and date of issuance.

2. The plaintiff company, in order to obtain a rescission of the insurance policy in question, must repay and refund the premium of $402.15 collected by its authorized agent from Dr. Shaffer. The plaintiff shall make such refund of insurance premium by paying to the clerk of this court the sum of $402.15 for the use and benefit of the estate of Dr. Shaffer, and upon such repayment and refund a judgment will be entered determining the life insurance policy in question to be void from its inception and date of issuance.